45 So.2d 19

**NEESE et al. v. ELLIS et al.**

**4 Div. 573.**

Supreme Court of Alabama.

Jan. 19, 1950.

Rehearing Denied March 9, 1950.

Frank J. Tipler, Jr., of Andalusia, for appellants.

378

Powell, Albritton & Albritton, of Andalusia, for appellees.

STAKELY, Justice.

Tempie Neese and Charlie Neese (appellants) began this suit by filing a statutory bill to quiet title against J. T. Ellis, Mrs. J. T. Ellis, his wife, and Rex Thomas (appellees). The bill was amended to show the source of complainant's alleged title and to show certain acts of ownership on the part of complainants, including payment of taxes, execution of a mortgage on the property and the installation of the foundations of a home thereon. The respondents filed answer which they prayed to be taken as a cross-bill alleging therein their title and claim to the property. The case was tried orally before the court with the result that the original bill, as amended, was dismissed, and the cross-bill of the respondents was sustained. Under the final decree title to the property was established in the respondents as will be shown. The appeal here is from the foregoing decree.

The property involved in this suit lies just at the outskirts of the City of Andalusia on the Andalusia-River Falls Highway It is about an acre in area and is triangular in shape with a frontage of about three hundred and fifteen feet on the highway. In November 1924 J. T. Ellis and his wife bought their farm home of about one hundred eleven and one-half acres, which included the one acre here involved and immediately commenced construction of three houses thereon using and occupying the lands, according to tendencies of the evidence, as a whole continuously from 1924 or 1925 to date. The acre in question lies at the easterly corner of the tract, the approximate center thereof being about three hundred feet from the driveway to the Ellis home. No house was erected on the acre but no fence, hedge row, bush or other obstacle separated the acre from the remainder of the Ellis farm. Tendencies of the evidence show that no one else occupied the acre from the time they bought in 1924 until 1948 when appellants entered just prior to this suit and no structure was there.

Tendencies of the evidence further showed that appellees used the acre continuously along with their other farm lands from the date of purchase, specifically using it for grazing of their cattle, picking of berries, planting of pecan and fruit trees and gathering fruit and nuts therefrom. There is a ditch which splits the acre almost in half and, according to tendencies of the evidence, appellees continuously cultivated the part of the acre up to the ditch when they cultivated their other lands. Appellees further included the acre in their fence from 1934 or 1935 to 1940, when the fence was moved for use elsewhere. They assessed and paid taxes on the acre for more than twenty years prior to the suit and openly mortgaged it on two occasions.

Appellees according to their testimony knew nothing of an adverse claim to the acre until about a year and a half prior to the trial when a sign "stating it was

personal property" was erected thereon. The sign was immediately destroyed by J. T. Ellis. Shortly before this suit another sign was erected and a single strand fence was put up, both of which were immediately torn down by J. T. Ellis. Shortly prior to this suit J. T. Ellis saw Charlie Neese digging for a foundation for a house and then went to him and advised him that it was on his land, but Charlie Neese continued until the foundation was almost completed, then abandoned the construction and brought this suit.

Prior to 1906 the entire tract of one hundred eleven and a half acres was owned by William Fletcher, the father of Ed Fletcher. On January 15, 1906, William Fletcher executed a deed to Ed Fletcher to the one acre of land here involved out of the entire tract. This deed was recorded February 8, 1906. On April 4, 1922, William Fletcher executed a deed for the entire one hundred eleven and a half acres to S. Sulzbacher and Lucien Loeb, as trustees. On November 14, 1924, the said trustees executed a deed to the entire tract to appellees J. T. Ellis and Mrs. J. T. Ellis. This deed was recorded December 2, 1924.

According to the tendencies of the evidence, Ed Fletcher and his family lived on the acre until 1925 or 1926, when he moved to Florida. According to further tendencies of the evidence, in 1929 or 1930, Ed Fletcher sold the house which was on the acre to N. R. Lewis who had it torn down and removed for scrap lumber. Appellants and their predecessors in title assessed this acre continuously for taxes and paid the same since 1926. Their predecessors executed a mortgage on the acre which was foreclosed. After foreclosure the record title was vested in Ida Fletcher, and on February 5, 1947 Ida Fletcher and her husband, Ed Fletcher, made a deed to the acre to Jesse O'Neal, who in turn conveyed the acre to appellants.

In November 1946 J. T. Ellis and his wife conveyed a lot, one hundred and five feet by one hundred and fifty feet, to Rex Thomas (appellee) which lies within the disputed acre. So the title of Rex Thomas depends on the title of J. T. Ellis and wife.

There are tendencies of the evidence showing that the acre was unoccupied, was grown up in sage brush and briars and uncultivated and further that the only peach trees on the property were wild and that only one pecan tree stands on the property today.

From the foregoing statement it appears that appellants have the record title to the acre involved in the litigation. William Fletcher made his deed in 1906 to his son Ed Fletcher through whom appellants claim by mesne conveyances. William Fletcher executed his deed to the entire tract of one hundred eleven and a half acres to S. Sulzbacher and Lucien Loeb, as trustees, April 4, 1922, who in turn conveyed the entire tract to J. T. Ellis and his wife in 1924. So the record title of appellants must prevail unless title by adverse possession is established in J. T. Ellis and his wife.

There is a dispute in the evidence as to whether the property was occupied when appellees Ellis received their deed in 1924. According to them it was unoccupied. According to appellants, Ed Fletcher moved from the property in 1925 or 1926, when he went to live in Florida. According to appellees when they entered in 1924 the only structure on all the property was a small shack not on the acre, but near their house and it was later removed.

Assuming for the sake of argument that Ed Fletcher was in possession of the acre at the time of the Ellis purchase, it is without dispute that Ed Fletcher moved off the property no later than early in 1926. There is evidence then to show that for twenty years appellees exercised possession over the acre under color of title and with listing of the property for taxes. There was testimony tending to show circumstances material on the issue of adverse possession of the entire acre, viz., grazing livestock, picking berries, planting peach, plum and pecan trees and gathering of fruit and nuts therefrom and also cultivation up to the ditch. Adverse possession up to the ditch on the acre under color of title would give constructive possession

of the entire acre. Chastang v. Chastang, 141 Ala. 451, 37 So. 799, 109 Am.St.Rep. 45; Moorer v. Malone, 248 Ala. 76, 26 So. 2d 558.

To summarize, the adverse possession of J. T. Ellis and his wife was continuous (more than twenty years) notorious (exercised adjacent to a main public highway), open (planting of trees, grazing of livestock and cultivating), actual, hostile and exclusive (all adverse attempts repelled by J. T. Ellis and his wife) and this showed all the elements of adverse possession.

We have considered the evidence with great care and cannot say that the finding of the trial court is palpably wrong. So we will not disturb its decree. Sneed v. Sneed, 248 Ala. 88, 26 So.2d 561; Randolph v. Randolph, 245 Ala. 689, 18 So. 2d 555.

Affirmed.

BROWN, LIVINGSTON and SIMPSON, JJ., concur.