53 So.2d 736

**THOMAS v. ROGERS.**

I Div. 439.

Supreme Court of Alabama.

June 28, 1951.

Harry Seale, M. A. Marsal and A. J. Seale, Mobile, for appellee.

Caffey, Gallalee & Caffey, Mobile, for appellant.

STAKELY, Justice.

This is a suit in statutory ejectment. brought by Cooper W. Thomas (appellant). against C. C. Rogers (appellee). The land involved is a lot fronting 40 feet on the east side of Whistler Avenue in the City of Prichard, Alabama, and running back of even width 95 feet. On the trial of the. cause there was a verdict and judgment for the defendant. The plaintiff made a. motion for a new trial on the ground, among others, that the verdict was contrary to the weight of the evidence. The court overruled the motion and this ruling constitutes the basis on which reversal is. sought on this appeal.

The plaintiff and the defendant claim under a common source of title. The plaintiff claims under a deed from the sole heirs at law of P. J. Glass, deceased. The defendant claims under a tax deed based on a sale against P. J. Glass and the statute of limitations of three years. The defendant made no effort to prove the regularity of the tax sale under which he claimed but relied on the short statute of limitations of three years. The decisive question before the court is whether the defendant met the burden of proving title by adverse possession of three years so that the judgment can stand as against the plaintiff's. motion to set it aside and grant a new trial.

Unless relieved by statute, the burden is on one claiming title under a tax.

sale to show affirmatively that the requirements of the law with respect to such a proceeding were strictly observed. Galloway Coal Co. v. Warrior Black Creek Coal Co., 204 Ala. 107, 85 So. 440; Harton v. Enslen, 182 Ala. 408, 62 So. 696. Section 277, Title 51, Code of 1940 relieves one claiming under a tax title from this burden only where he claims under a tax deed executed and acknowledged by the probate judge but not when he claims under a tax deed from the state or a municipality thereof. Grayson v. Schwab, 235 Ala. 398, 179 So. 377; Harton v. Enslen, supra.

The defendant who claimed title under a tax deed from the state made no proof of regularity and validity of the tax title under which he claimed and therefore the burden was on him to show adverse possession for the statutory period in connection with his tax title in order to prevail. Moorer v. Malone, 248 Ala. 76, 26 So.2d 558; § 295, Title 51, Code of 1940.

When the lot was first obtained by C. C. Rogers, the defendant, under the tax deed it was grown over with heavy weeds and underbrush and had a number of trees on it. It had a chicken house on it and was serving as a dumping ground for old cans and other rubbish. The defendant, who was the Clerk of the City of Prichard, said with respect to the property when he bought it, "Well, it was a sightly (unsightly) mess in Prichard, trees and rubbish on it was as high as a house, and there was varmits (varmints) and snakes and everything else in it, it was awful looking place, * * *." There were some large trees on the lot, an old Yupon, some elders and evergreen oaks and pine trees. (Parenthesis supplied).

The tax deed was dated July 28, 1943 and this suit was filed on February 25, 1948.

Within 30 days after the purchase of the property by the defendant, he employed an engineering firm to survey the property and to place stakes on the corners. After the survey was made the following things were done by or for the defendant. (1) The property was cleaned off twice a year beginning with the first part of 1944. (2) The rubbish was cut down and the old cans and wire were piled up so that it could be seen that the property was owned by some one, the property being adjacent to Whistler Avenue. (3) A year later some of the cans and wire were hauled off and others were buried. (4) The chicken house was moved in 1944 after the lot was cleaned up. (5) The bushes were burned in 1944. (6) There was a pine tree on the lot 12 or 13 inches in diameter and at least 40 feet high. Laborers cut it down in 1945 and it was disposed of for wood. (7) In 1945 a sewer line was placed across the property to the drainage sewer from another lot across the lot in question into Whistler Avenue. (8) In 1945 a water line was laid across the property at a different location with ditches dug from 2 to 3 feet in depth and dirt piled up. (9) The property was filled in with dirt in 1944 to cover up the rough places and low places and dirt was spread over the lot. (10) A number of persons came around to purchase the lot from the defendant during the period after the tax deed was received by him. (11) The defendant stopped people from dumping stuff on the lot in 1944. (12) The City of Prichard made an assessment in 1945 to cover the cost of the sewer line as a public improvement and the defendant paid the assessment. (13) The defendant in 1944 assessed the lot for taxes and paid the taxes on it from the date of the purchase to the date of this suit. (14) A building in 1947 was erected on the lot and after the erection the man who rented the building put machinery in the building and it has been used as an ice cream parlor. (15) In 1944 a "no dumping" sign 12 by 18 inches in size with the defendant's name on it was placed on the lot about 4 feet high and approximately 15 to 20 feet back from the street. (16) According to the defendant he constantly walked back and forth across the lot.

In Farley v. Smith, 39 Ala. 38, with respect to adverse possession, it was said: "The possession must always be as definite as the character of the land is susceptible of, and must be evidenced by public acts, such as a party would exercise over his own property, and would not exercise over another's; must be continued, and so notorious that the owner may reasonably

be presumed to have notice of the possession, and of the claim of title. * * *."

 In Bell v. Denson, 56 Ala. 444, it was said: "The possession must be by acts suitable to the character of the land; * * *." The property here involved is a vacant lot. It is obvious that the acts of ownership and dominion necessary to indicate adverse possession of a vacant lot need not be and cannot be the same with respect to a lot covered with valuable improvements or on which there is a place of residence. 2 C.J.S., Adverse Possession, § 38, page 550. See also Neese v. Ellis, 253 Ala. 377, 45 So.2d 19.

We think there can be no doubt that in the case at bar there was evidence of adverse possession for a period of three years prior to the institution of this suit. The lot abutted on a public thoroughfare and at the time of its acquisition by the defendant was vacant, except for a small hen house. It was used as a dumping ground of rubbish, old cans and wire and was grown up in weeds and underbrush. When the defendant entered he first had it surveyed to be sure of its boundaries and then he had the rubbish and brush piled up and burned off and the chicken house moved. Subsequently he put up a "no dumping" sign. He cut down tall trees on the lot, dug a ditch across the lot and placed a sewerage line in it. He filled in the low places and in 1947 he erected a building on the lot which is used as an ice cream parlor. He walked back and forth over the lot and people came to his place of business to purchase the lot from him. He assessed the land for taxation and paid the assessment and paid the sewerage and water assessment on the land. It is clear to us that these were acts of ownership and dominion such as to indicate to others a possession and ownership.

The point seriously argued on this appeal however is that the finding of the jury was contrary to the great weight of the evidence. There was testimony for example that even though the defendant may have cleared the lot off in the early part of 1944 and again in the fall of 1944, this was not noticeable to people passing by, who testified that it was grown up in bushes, weeds and briars during all of this period. Accordingly it is claimed that either the lot was not cleared off on these two occasions or it was not kept in that condition.

We have examined the evidence however with great care and cannot agree with the position of the appellants. Verdicts are presumed to be correct and no ground of new trial is more carefully scrutinized and more rigidly limited than that the verdict is against the evidence. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Smith v. Smith, 254 Ala. 404, 48 So.2d 546. Furthermore we recognize that when the trial court, as here, refuses to grant a new trial, the presumption in favor of the correctness of the verdict is strengthened. Bell v. Nichols, 245 Ala. 274, 16 So.2d 799; Smith v. Smith, supra.

The ruling of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER and LAWSON, JJ., concur.