The Water Works Sanitary Sewer Board of the City of Montgomery ("the Board") and the East Montgomery Water, Sewer Fire Protection Authority ("East Montgomery") appeal separately from the trial court's judgment declaring Thelma Parks, Mary E. Jones, Mary A. Jones, Ruth J. Morgan, and Dorothy Jones ("the Jones heirs") to be the true owners of certain property in Montgomery County. The Board and East Montgomery argue that the trial court misapplied the law of adverse possession and that the evidence demonstrates that they, through their predecessor in interest, satisfied the elements of adverse possession or, in the alternative, if they are not the owners of the property, that they are entitled to equitable relief for the value of the improvements they made to the land. We agree that the trial court incorrectly applied the law of adverse possession. We, therefore, reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.
 Factual and Procedural History
In 1939, John Green conveyed property by deed to Dock Barnett. Dock Barnett deeded a portion of that property to Silas Jones. In 1978, John Green also conveyed property by deed to his son, James Green. That conveyance included a portion of the *Page 442 
property that had been conveyed previously to Barnett and through Barnett to Jones. The portion of property that John Green conveyed first to Barnett and then again to James Green is the subject matter of this dispute; it is referred to in this opinion as "the subject property."
In 1968, Silas Jones died intestate and his property, including the subject property, passed to the Jones heirs by intestate succession. In 1987, James Green conveyed his property, including the subject property, by deed to Paul Thomas, who began developing the Cedar Pines subdivision. The subject property is situated between property to the east that was undisputedly owned by James Green ("the Green property") and property to the west undisputedly owned by Silas Jones ("the Jones property").
In approximately 1988, Thomas began constructing Cedar Pines Road on the subject property, to provide the subdivision access to Old Pike Road. Before the construction of Cedar Pines Road, the only access to the subdivision from Old Pike Road was by means of a dirt road that wound through the subject property. Cedar Pines Road travels along the northern border of the Green property, through the subject property, and across a portion of the Jones property until it reaches Old Pike Road.
According to the testimony of Mary A. Jones, the Jones family knew that Thomas was constructing Cedar Pines Road, and the family objected to the construction. The family contacted a lawyer but took no further action because, according to Mary A. Jones, the family realized that Thomas had a right of access to and from his property. Because a part of Cedar Pines Road would cross through the Jones property, Thomas sought an easement over that part of the property. The Jones heirs refused to give Thomas an easement. Thomas then brought a condemnation action, seeking to condemn the part of the Jones property over which Cedar Pines Road would cross. The record does not indicate the outcome of that action, but Thomas finished the construction of Cedar Pines Road, a portion of which crosses the Jones property. Thomas also had water-lines put in on the subject property along the south side of Cedar Pines Road. He testified that both he and James Green, his predecessor in interest, had been assessed and had paid taxes on the subject property since 1978, when it was conveyed to James Green.
Cedar Pines Road divided the subject property into two parcels: Parcel A, which is a 2.5-acre, pie-shaped piece of property on the north side of Cedar Pines Road, and Parcel B, which is the portion of the subject property that lies south of Cedar Pines Road. In 1992, Thomas conveyed Parcel B to Paul Clark and Carolyn Clark. In 2001, Thomas conveyed Parcel A to East Montgomery.
Shortly after purchasing the property, East Montgomery began constructing a water tank on Parcel A. During the preparatory stages of construction, East Montgomery was informed that the Jones heirs claimed ownership of Parcel A. According to the testimony of Guthrie Jeffcoat, East Montgomery's consulting engineer on the water-tank project, East Montgomery contacted its lawyer, who certified that East Montgomery had good title to Parcel A. East Montgomery built the water tank on Parcel A, over the objections of the Jones heirs.[1] *Page 443 
In 2002, the Jones heirs sought a judgment against East Montgomery, the Clarks, and Montgomery County, declaring that the Jones heirs are the true owners of the subject property. Montgomery County, who the Jones heirs argued held an easement over a portion of the subject property, was eventually dismissed from the action. The Clarks and the Jones heirs eventually reached a mediated agreement as to the ownership of Parcel B. Thus, the dispute before the trial court was limited to the ownership of Parcel A. Before trial, the Board moved to intervene in the action, claiming that it was at that time in the process of purchasing all East Montgomery's assets, including the property on which the water tank had been built. Through that purchase, the Board would also assume all East Montgomery's responsibility for providing water and sewage services, including those services provided by the water tank on Parcel A. The trial court granted the Board's motion to intervene.
The trial court heard ore tenus testimony and ultimately entered a judgment in favor of the Jones heirs, stating that the Board and East Montgomery had failed to establish by clear and convincing evidence that Thomas had adversely possessed Parcel A for the 10-year statutory period before he conveyed the property to East Montgomery. The trial court also denied "[a]ll other relief requested by any party not herein specifically addressed." The Board and East Montgomery moved the trial court to alter, amend, or vacate its judgment or, in the alternative, for a new trial, on the ground that the trial court relied on facts that were not supported by the record. After a hearing, the trial court denied their motion. The Board and East Montgomery separately appealed the trial court's judgment. Those appeals were consolidated for purposes of writing one opinion.
 Issues
The Board and East Montgomery raise three issues on appeal. First, they argue that the trial court erred in its application of the law to the facts and relied on facts not supported by the record. Second, they argue that the trial court erred in finding that the Board and East Montgomery, through its predecessors in interest, did not adversely possess Parcel A. Third, they argue that, even if it did not err in determining that the Jones heirs owned the subject property, the trial court erred in denying the Board and East Montgomery's plea for equitable relief for improvements East Montgomery made to Parcel A.
 Standard of Review
"`[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v.State, 843 So.2d 122, 125 (Ala. 2002). `"The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment."' Waltman v. Rowell,913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v.Dobbs, 474 So.2d 77, 79 (Ala. 1985)). `Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts.' Id." *Page 444 Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005). "Under the ore tenus standard, the judgment of the trial court may not be disturbed unless its findings are "`clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence."'" Fowler v.Johnson, 961 So.2d 122, 129 (Ala. 2006) (quotingPollard v. Unus Props., LLC, 902 So.2d 18, 23
(Ala. 2004), quoting in turn American Petroleum Equip. Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala. 1997)).
 Analysis
The Board and East Montgomery argue that the trial court erroneously applied the law to the facts of the case and relied on facts that were not supported by the record. They ask this Court to vacate the judgment of the trial court holding that they do not own Parcel A. We agree that the trial court incorrectly applied the law of adverse possession to the facts of this case; therefore, we reverse its judgment and remand the case.
Alabama law recognizes two types of adverse possession: adverse possession by prescription and statutory adverse possession. A party claiming ownership by adverse possession by prescription must show that he or she had "actual, exclusive, open, notorious, and hostile possession under a claim of right for a 20-year period." Strickland v. Markos, 566 So.2d 229,232 (Ala. 1990). Statutory adverse possession, codified at § 6-5-200, Ala. Code 1975,
 "`requires the same elements [as adverse possession by prescription], but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription.'"
Sparks v. Byrd, 562 So.2d 211, 214 (Ala. 1990) (quoting Kerlin v. Tensaw Land Timber Co.,390 So.2d 616, 618 (Ala. 1980)).
The Board and East Montgomery claim that they, through Thomas, their predecessor in interest, acquired title to the property by statutory adverse possession. To prevail on this claim under § 6-5-200, the Board and East Montgomery must show (1) that Thomas held the property under color of title or paid taxes on the property for 10 years prior to the commencement of the declaratory-judgment action by the Jones heirs; and (2) that Thomas had actual, open, notorious, hostile, and exclusive possession of the property for at least 10 years before the commencement of the action. Sparks, 562 So.2d at 214. The Jones heirs concede that the Board holds, and East Montgomery and its predecessors in interest held, Parcel A under color of title. Therefore, the Board and East Montgomery have satisfied the first prong of the statutory-adverse-possession analysis, and the success of their claim depends on whether Thomas, as their predecessor in interest, satisfied the second prong — i.e., that he had actual, open, notorious, hostile, and exclusive possession of the property for 10 years before the Jones heirs filed their action.
The trial court's order analyzed the elements of adverse possession as they related to Thomas's possessory acts as to Parcel A only, treating evidence of his possessory acts on other parts of the subject property as irrelevant to the question of his adverse possession of Parcel A. However, we have held that "one who adversely possesses a part of a tract of land and has color of title to the whole tract, gains possession of all the land provided no one else [is] in possession." Long v. Ladd, 273 Ala. 410, 413,142 So.2d 660, *Page 445 
662 (1962); see also Duke v. Harden, 259 Ala. 398,400, 66 So.2d 899, 900 (1953) ("[T]he appellees and their predecessors in title were the holders of the legal title and their possessory acts over a part of the land described in their respective deeds is deemed in law as constructive possession of all of the land therein described not actually in the adverse possession of another. . . ."); Neese v.Ellis, 253 Ala. 377, 379-80, 45 So.2d 19, 21 (1950) ("Adverse possession up to the ditch on the acre under color of title would give constructive possession of the entire acre.").
When James Green conveyed the subject property to Thomas, he conveyed it as an undivided whole, meaning that Thomas, like James Green, held color of title to the subject property in its entirety. Therefore, his possessory acts on Parcel B, if sufficient, could establish adverse possession of the entire subject property, including Parcel A.[2] Thomas's actions taken as to Parcel B were relevant to whether the Board and East Montgomery owned Parcel A and should have been considered by the trial court.
We hold that the trial court incorrectly applied the law to the facts by limiting its application of the elements of statutory adverse possession to Thomas's possessory acts on Parcel A alone. Although we review de novo the issue of adverse possession, [3] we do not reach the further question of whether the Board and East Montgomery owned Parcel A through Thomas's adverse possession. The answer to that question requires us to address whether Thomas's possessory acts on the entire subject property were sufficient to establish adverse possession of that property, and the trial court did not consider the evidence of Thomas's possessory acts on any part of the subject property other than on Parcel A. Such "questions of adverse possession are questions of fact to be determined by the trial court," and we have declined to reach such questions when the trial court has not addressed them first.Ratliff v. Giorlando, 343 So.2d 506, 508 (Ala. 1977);see also Barnett v. Estate of Anderson, 966 So.2d 915,920 (Ala. 2007) ("We decline to review an issue . . . that was not considered by the trial court."). Therefore, we reverse the trial court's judgment and remand the case for the trial court to determine whether Thomas adversely possessed the subject property in its entirety, including Parcel A, and, thus, passed title to the Board and *Page 446 
East Montgomery as his successors in interest. Because the availability of equitable relief will depend on the trial court's determination of the adverse-possession issue, we do not address at this time the Board and East Montgomery's argument that they are entitled to equitable relief related to the improvements they made on Parcel A.
 Conclusion
The Board and East Montgomery claim ownership of Parcel A through Thomas's adverse possession of the subject property, and Thomas held color of title to the subject property in its entirety during the relevant possessory period; therefore, the trial court should have examined Thomas's possessory acts on the subject property as a whole. In failing to do so it misapplied the law to the facts. Therefore, we reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.
1051376 — REVERSED AND REMANDED.
1051408 — REVERSED AND REMANDED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] Mary A. Jones testified that after she realized that the water tank was being built on what she considered to be the Jones property, she contacted Jeffcoat and told him to stop building on the Jones property. Jeffcoat told Jones to telephone Eric Bowen, an attorney for East Montgomery, which she did. Bowen told her to telephone one of the other attorneys for East Montgomery, Jesse Williams, which she did. She also testified that she telephoned the county commission office, objecting to the construction on the water tank.
[2] A party seeking to establish ownership by either adverse possession by prescription or statutory adverse possession "can `tack' his period of possession onto that of a prior adverse claimant in order to establish a continuous stream of adverse possession for the required time span." Sparks,562 So.2d at 216. Thus, if necessary, the Board and East Montgomery can establish title to the property by showing that before Thomas passed title to them either Thomas had adversely possessed the property for the requisite 10-year period, or Thomas and his predecessor in interest, James Green, had adversely possessed the property for the requisite 10-year period, or they can tack onto their own adverse possession, if any, Thomas's adverse possession in order to establish the requisite 10-year period.
[3] The "`ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or incorrect application of law to the facts.'"Fadalla, 929 So.2d at 433 (quoting Waltman v.Rowell, 913 So.2d 1083, 1086 (Ala. 2005)).Washington v. State, 922 So.2d 145, 158
(Ala.Crim.App. 2005) ("`"`[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment.'"' Ex parte Jackson,886 So.2d [155,] 159 [(Ala. 2004)], quoting [State v.]Hill, 690 So.2d [1201,] 1203 [(Ala. 1996)], quoting in turn, Ex parte Agee, 669 So.2d [102,] 104 [(Ala. 1995)]. Thus, we review the trial court's conclusions of law and its application of law to the facts under the de novo standard of review.").