Retail Developers of Alabama, LLC ("RDA"), appeals the trial court's judgment in favor of East Gadsden Golf Club, Inc., d/b/a Rivertrace Golf Club ("the Golf Club"). We hold that the trial court did not commit reversible error in finding that the agreement between RDA and the Golf Club for the sale of the Rivertrace golf course had been terminated, and we affirm.
 Facts and Procedural History
In March 2005, the Golf Club and RDA entered into an agreement ("the agreement") by which RDA promised to purchase from the Golf Club, for $13 million, a parcel of land located in East Gadsden, Etowah County, on which is located the Rivertrace golf course ("the property"). *Page 927 
The agreement provides that the closing on the property must take place within 90 days following the expiration of the 270-day "initial inspection period" during which RDA would perform due diligence on the property to determine whether it was suitable for retail development. RDA could extend the inspection period by 90 days by paying an additional deposit of $15,000 earnest money and indicating in writing RDA's intent to extend the inspection period. The agreement provided that the initial inspection period would be triggered by the latest happening of one of three events: (1) the effective date of the agreement; (2) the approval by the City of Gadsden of a municipal incentive package for RDA; or (3) the Golf Club's delivery to RDA of a set of environmental reports and reliance letters. For the purposes of this litigation, the triggering event would have been the Golf Club's providing RDA with a set of environmental reports and a reliance letter for potential lenders. When the agreement was executed, RDA paid $25,000 to Chicago Title Insurance Company ("the escrow agent") as earnest money. About that same time, the Golf Club delivered previously prepared environmental reports, a title commitment, and a survey of the property to RDA.
Testimony at trial indicated that in April 2005 a representative of QORE, Inc. ("QORE"), the engineering firm that had previously prepared the environmental reports on the property for the Golf Club, informed the parties that it would be a conflict of interest for it to provide RDA with reports and reliance letters the Golf Club had previously paid for. Bennett Tucker, president of the board of directors of the Golf Club, and Katrina Jarboe, QORE's representative, testified at trial that the parties reached an agreement by which RDA would become QORE's client for the purposes of obtaining current environmental reports and reliance letters; they further testified that the cost of this work was to be paid out of the funds provided by RDA to the Golf Club at the closing on the property.
In November 2005, RDA gave notice in writing to the Golf Club of RDA's understanding that the initial inspection period would expire on January 23, 2006, unless extended pursuant to the agreement. The letter was signed by Jason Stinson, the president of RDA at that time, and stated:
 "This letter is to confirm that based on our calculations, the [Initial] Inspection Period (unless extended) pursuant to the [agreement], shall expire 301[1] days following March 28, 2005, which would make the expiration day of the [Initial] Inspection Period at the end of the day on January 23, 2006, unless extend [sic] pursuant to the [agreement].
 "The [agreement] allows for an extension of the [Initial] Inspection Period of 90 days after January 23, 2006, based on [RDA] giving notice and paying to the Escrow Agent an additional sum of $15,000.
 "Finally, the Closing shall occur on or before 90 days following the [Initial] Inspection Period or Extended Inspection Period. . . ."
According to RDA's calculations set forth in its letter, the closing needed to occur on or before July 22, 2006, 90 days following the expiration of the extended inspection period on April 23, 2006. In December 2005, RDA paid an additional $15,000 to the escrow agent by a check; the following *Page 928 
was written in the "memo" portion of the check: "To extend inspection period contract between Retail Development of Alabama and East Gadsden Golf Club."
In March 2006, RDA's attorney notified the Golf Club that, regardless of any previous representations made by RDA, RDA's position was now that neither the initial inspection period nor the extended inspection period had begun to run and that RDA was not required to close the sale of the property for at least 450 days.[2] In the same letter, RDA accused the Golf Club of failing to comply with the provision of the agreement that required the Golf Club to provide the environmental reports and reliance letters to RDA and stated that it was RDA's position that the initial inspection period would not begin to run until the Golf Club complied with that provision. The Golf Club notified RDA in writing that it disagreed with RDA's statements and that the Golf Club would not agree to further extend the inspection period or to delay the closing date. RDA's attorney sent the Golf Club a second letter repeating RDA's demand for additional time and refusing to close by July 22, 2006. The Golf Club notified RDA that pursuant to the terms of the agreement, it elected to declare the agreement terminated and to retain the earnest money as liquidated damages for RDA's refusal to consummate its purchase of the property on or before July 22, 2006.
In May 2006, although no action had been filed in any court, RDA petitioned the Etowah Circuit Court under Rule 27, Ala. R. Civ. P., seeking to depose the officers and shareholders of the Golf Club regarding the Golf Club's position that the agreement has been terminated. The Golf Club responded by petitioning the trial court to intervene in the discovery request and by seeking a judgment declaring that the agreement had expired upon RDA's breach, that the Golf Club was entitled to retain the $40,000 earnest money, and that the Golf Club was free to sell the property to any other buyer. RDA in turn petitioned the trial court for an order declaring the status of various aspects of the agreement and requiring the Golf Club to provide a new set of environmental reports. The parties agreed to a bench trial to settle the claims for declaratory relief, reserving determination of other claims for trial by jury at a later time.
After considering ore tenus testimony, the stipulations of the parties, and the exhibits provided at trial, the trial court entered a judgment in favor of the Golf Club, declaring that the agreement had been terminated and awarding the Golf Club the $40,000 earnest money and certifying its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Following the trial court's denial of RDA's Rule 59, Ala. R. Civ. P., motion to alter, amend, or vacate the judgment, the Golf Club moved the trial court to enforce the judgment and to release the lis pendens notice RDA had placed on the property. The trial court denied the motion, conditioned upon RDA's posting a $75,000 supersedeas bond. RDA has not posted a bond but has appealed.
Following RDA's filing of its notice of appeal, the Golf Club moved this Court to dismiss the appeal based upon a subsequent contract for sale of the subject property to another party. During the exchange of motions between the parties on this issue, that subsequent contract was rescinded. Therefore, the motions filed by *Page 929 
both parties regarding the dismissal of this appeal are denied as moot.
RDA also moved this Court to compel transfer of certain sealed portions of the record from the trial court to this Court. It appears from RDA's argument that the sealed documents contain evidence regarding how much of the agreement the members of the Golf Club's board of directors read and understood before approving it. RDA's brief at 27. The knowledge of the board prior to its approving the agreement is not a material or even a disputed issue in this case, and we find sufficient evidence from the record before us to decide that question without resort to the sealed records. Therefore, we deny RDA's motion as moot.
 Issues
RDA raises three issues on appeal. First, RDA argues that the Golf Club failed to perform its obligations under the agreement in a diligent and prudent manner. Second, it argues that the trial court erred in finding that the agreement had been amended by the conduct of the parties and that the Golf Club was thereby relieved of its obligation to provide environmental reports to RDA. Third, it argues that the trial court erred in finding that the Golf Club "has been severely prejudiced" by the acts of RDA.
 Standard of Review
"`"[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust."'" Water Works Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443
(Ala. 2007) (quoting Fadalla v. Fadalla, 929 So.2d 429,433 (Ala. 2005), quoting in turn Philpot v. State,843 So.2d 122, 125 (Ala. 2002)). `"The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.'" Waltman v. Rowell, 913 So.2d 1083,1086 (Ala. 2005) (quoting Dennis v. Dobbs,474 So.2d 77, 79 (Ala. 1985)). "Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts." Waltman v. Rowell, 913 So.2d at 1086.
 Analysis I.
RDA argues that the Golf Club failed to perform its obligations under the agreement in a diligent and prudent manner. RDA offers a short list of inferences from the record that it alleges demonstrates that the Golf Club can be "viewed as not having run a tight ship." RDA's brief at 28. RDA asks this Court, based on these allegations of inattention and lack of contractual sophistication, to reverse the trial court's judgment finding that the agreement was terminated as a result of RDA's refusal to close within 90 days of the expiration of the extended inspection period provided for in the agreement. However, RDA does not cite any legal authority for what appears to be an implicit argument that the trial court erred in finding that the agreement is no longer in force. "`"Where an appellant fails to cite to any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant."'" Ex parte Burnett,978 So.2d 729, 737 (Ala. 2007) (quoting Birmingham News Co.v. Horn, 901 So.2d 27, 28 (Ala. 2004), quoting in turnSea Calm Shipping Co. v. Cooks, 565 So.2d 212, 216
(Ala. 1990)). Because RDA has not cited any authority in support of its *Page 930 
position, we affirm the judgment of the trial court on this ground.
 II.
RDA next argues that the trial court erred in finding that the agreement had been amended by the conduct of the parties so as to relieve the Golf Club of its obligation to provide environmental reports to RDA. RDA argues that waiver of a contractual provision requires intent, and it cites three cases in support of this premise: Brown-Marx Assocs., Ltd. v.Emigrant Sav. Bank, 703 F.2d 1361, 1369 (11th Cir. 1983) ("Under Alabama law, waiver requires the intentional relinquishment of a known right." (citations omitted));Providence Washington Ins. Co. v. Stanley,403 F.2d 844, 850 n. 6 (5th Cir. 1968) ("Waiver is the intentional relinquishment of a known right."); and City of Montgomeryv. Weldon, 280 Ala. 463, 467, 195 So.2d 110, 113 (1967) (" `Waiver is voluntary surrender or relinquishment of some known right, benefit or advantage; estoppel is the inhibition to assert it.'" (quoting Black's Law Dictionary (4th ed. 1951))).
Although RDA correctly argues that intent is necessary to effect a waiver, it fails to consider this Court's decision inMobile Airport Authority v. HealthSTRATEGIES, Inc.,886 So.2d 773 (Ala. 2004), in which we quoted Ford v.Jackson Square, Ltd., 548 So.2d 1007, 1013 (Ala. 1989), for the proposition that "`[an] intention to waive a right may be found where one's course of conduct indicates such an intention or is inconsistent with any other intention,'" 886 So.2d at 782
(citing City of Montgomery v. Weldon and BraswellWood Co. v. Fussell, 474 So.2d 67 (Ala. 1985)). Here, the trial court found that Jason Stinson's oral statements, written communications, and actions taken on behalf of RDA led the Golf Club reasonably to believe that all of its requirements under the agreement, including its duty to provide environmental reports and reliance letters to RDA, had either been modified or waived, at least insofar as they applied to the calculation of the initial inspection period and the extended inspection period leading up to closing.[3] In light of this evidence, we cannot conclude that the trial court's finding on this issue was palpably erroneous or manifestly unjust. Therefore, we find no reversible error, and we affirm the trial court's judgment on this ground.
 III.
RDA argues that the trial court erred in finding that the Golf Club "has been severely prejudiced" by the acts of RDA. RDA appears to argue that the Golf Club could not have been severely prejudiced by RDA's representations regarding the running of the inspection periods because, it argues, the Golf Club did not have "clean hands."
The trial court heard ore tenus testimony and determined that the Golf Club had been severely prejudiced by the representations and conduct of RDA's president Jason Stinson on three separate occasions, which, it concluded, led the Golf Club reasonably *Page 931 
to believe that all acts necessary to trigger the initial inspection period had occurred. First, the record contains evidence that Stinson made oral statements to Tucker, president of the Golf Club's board, and Jarboe, QORE's representative, in April 2005, indicating that in order to avoid a conflict of interest with QORE's existing relationship with the Golf Club, RDA would commission the required environmental reports and reliance letters directly from QORE and would then be reimbursed for that expense by the Golf Club at closing. Second, in November 2005, Stinson sent a letter acknowledging that by its own calculations the initial inspection period would expire on January 23, 2006. Third, Stinson sent a check for $15,000, representing additional earnest money, to the escrow agent in December 2005, with a notation on the check that the money was being provided in accordance with the agreement to ensure that the extended inspection period would continue once the initial inspection period expired on January 23, 2006. The trial court found that these actions led the Golf Club reasonably to believe that the mutual understanding between the parties was that the initial inspection period had started to run and therefore that the closing would occur no later than July 22, 2006.
Based on these findings of fact, the trial court ruled that
 "[the] Golf Club has been severely prejudiced by RDA's representations and conduct if RDA did not in fact intend to acknowledge the expiration of the Initial Inspection Period in January, 2006. The evidence in this case in no way supports the entry of an order affording RDA any more time to close."
The trial court's determination of prejudice is further supported by its finding that RDA does not now and did not in the past appear to have the financial resources to complete the purchase of the property and its finding that "[the] Golf Club has been unable to sell this Property to other potential buyers pending this litigation."
Nevertheless, RDA invites us to overrule the trial court's judgment on the basis that the trial court did not enter a specific finding that the Golf Club had clean hands in this transaction and was therefore entitled to equitable relief. This Court has held that "[the] application of the clean hands doctrine is a matter within the sound discretion of the trial courts." J M Bail Bonding Co. v. Hayes,748 So.2d 198, 199 (Ala. 1999) (citing Lowe v. Lowe,466 So.2d 969 (Ala.Civ.App. 1985)). Although the trial court did not address the clean-hands doctrine as it applied to the conduct of the Golf Club, this Court has held that "`[w]here a trial court does not make specific findings of fact concerning an issue, [this Court] will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.'" Woodland GroveBaptist Church v. Woodland Grove Cmty. Cemetery Ass'n,Inc., 947 So.2d 1031, 1039 (Ala. 2006) (quotingSundance Marina, Inc. v. Reach, 567 So.2d 1322, 1324
(Ala. 1990)). In addressing findings of fact on the doctrine of clean hands, we have held that "[i]t is noteworthy . . . that, while the unclean hands defense was raised as one of several defenses to the action, it was not adopted by the trial Court. . . . As the trial Court did not speak to this issue, we are unable at this point to focus our attention thereon." Knappv. Knapp, 392 So.2d 527, 530 (Ala. 1980) (citing Burchv. Southeastern Sand Gravel Co., 278 Ala. 504,179 So.2d 83 (1965)). Because the trial court applied equitable doctrines to the facts presented at the bench trial, it must have concluded that the Golf Club had clean hands.
RDA argues that the court's implicit finding of clean hands is in error *Page 932 
because, it says, the Golf Club was not diligent in submitting all the information required by the agreement and because certain Golf Club officers testified at trial that they had not completely read or entirely understood all the provisions of the agreement. Although these allegations, if true, would hardly present a model of prudent behavior on the part of one entering into a contract, "the doctrine of unclean hands cannot be applied in the context of nebulous speculation or vague generalities; but rather it finds expression in specific acts of willful misconduct which is morally reprehensible as to known facts." Sterling Oil of Oklahoma,Inc. v. Pack, 291 Ala. 727, 746, 287 So.2d 847, 864 (1973) (citing Weaver v. Pool, 249 Ala. 644, 32 So.2d 765
(1947)). The acts alleged by RDA to demonstrate the Golf Club's "unclean hands" simply do not rise to the level of morally reprehensible, willful misconduct. RDA has not presented this Court with evidence sufficient to demonstrate that the trial court's implicit holding is clearly erroneous.
We discern no palpable error or manifest injustice in the trial court's finding that the Golf Club was "severely prejudiced" by its reasonable reliance on the representations made by RDA.[4] Therefore, we affirm the trial court's judgment on this ground as well.
 Conclusion
RDA did not cite any legal authority for its argument that the agreement is still in force; therefore, that argument is waived. RDA has not demonstrated palpable error or manifest injustice in the trial court's holding that RDA's acts effected a waiver of certain provisions of the agreement. Finally, RDA's argument that the trial court was required to make a specific finding regarding the applicability of the clean-hands doctrine is without merit. Because RDA has not proven that the trial court committed reversible error, we affirm the trial court's judgment.
MOTIONS TO DISMISS APPEAL AND TO COMPEL TRANSFER OF SEALED PORTIONS OF RECORD DENIED; AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
[1] The agreement provides that if the City of Gadsden has not affirmatively approved the municipal incentive package within 30 days of the execution of the agreement, that contingency would be deemed satisfied on the 31st day following the execution of the agreement, thus triggering the running of the initial inspection period.
[2] The total of the 270-day initial inspection period, the 90-day extended inspection period, and the 90-day closing period.
[3] This Court has consistently held that non-waiver clauses and clauses that require modifications to be in writing can be found to have been waived upon proper proof.
 "This Court stated in Ex parte Coleman, 861 So.2d 1080 (Ala. 2003), that, under Alabama law, proof of an oral modification of a contract is allowed, notwithstanding a provision that oral changes following its execution were not binding. 861 So.2d at 1082, 1084. That holding is based on the premise `that a party who has included . . . a provision [barring oral modifications] in a contract for that party's benefit can certainly waive that provision.' 861 So.2d at 1084."
RaCON, Inc. v. Tuscaloosa County, 953 So.2d 321, 339(Ala. 2006).
[4] RDA also argues that the trial court's finding of severe prejudice was in error because, it argues, even if the agreement is enforced as written, the Golf Club will still sell the property, only at a later date. In the alternative, RDA argues that because the Golf Club does not appear to have become financially burdened because of the delay in closing, a finding of prejudice is in error. Neither of these arguments is supported by citation to authority. Therefore, we do not address them on appeal. Ex parte. Bamett, supra.