THOMAS, Judge.
Donnie Laney appeals from a judgment of the Cherokee Circuit Court determining that a 700-foot-long section of roadway (“the disputed roadway”) abutting property owned by Laney and John Edward Gar-mon is no longer a public road.

Facts and Procedural History

Laney and Garmon own adjacent parcels of real property. A roadway runs from a public highway to a point on Garmon’s property, and, for most of its length, the roadway runs across Garmon’s property; its edge forms the boundary between the two properties. In 2000, Garmon erected a gate blocking the disputed roadway. In 2005, Laney filed a complaint in the trial court requesting that the court (1) declare that the disputed roadway is a public road and enjoin Garmon from blocking it or otherwise interfering with the public’s access and (2) declare that Garmon had no right or interest in a parcel of property (“the disputed parcel of property”) that both parties claimed was included in their deeds’ descriptions. Garmon answered Laney’s complaint, alleging that the disputed roadway had been abandoned as a public road for at least 20 years and that he owned the disputed parcel of property.
The trial court held a hearing on La-ney’s complaint, at which it heard ore ten-us evidence. Several witnesses testified that at one time the disputed roadway was part of what was known as the Piedmont Cedar Bluff Road, a road regularly used by the public. The testimony from those witnesses all concerned a period occurring more than 20 years before the date of the hearing. The fact that the disputed roadway was, at some time in the past, part of a public road is not in dispute in this case.
Gary Laney, one of Laney’s brothers, testified that he regularly used the disputed roadway until Garmon blocked it in 2000; Gary testified that the disputed roadway had been accessible to the public before Garmon blocked access to it. Gary also testified that other people had used the disputed roadway to go hunting, to cut timber, or to farm. According to Gary, the last time he drove on the disputed roadway was between 4 and 10 years before the hearing. Gary further stated that everyone who had a connection with the disputed roadway had helped to maintain it; he said that he had last performed maintenance on the disputed roadway between 10 and 15 years ago.
According to Harold Laney, one of La-ney’s brothers, he owns property in the area and had lived in a house- at the beginning of the disputed roadway for several years. Harold testified that the disputed roadway is passable and that it had been used by him and other members of the public to hunt and to access pasture land. Harold stated that he had driven on the disputed roadway up until the time Gar-mon blocked access to it.
Michael Laney, one of Laney’s brothers, testified that he has owned property in the immediate vicinity of the disputed roadway since the mid 1980s. Michael stated that he had driven on the disputed roadway until the time Garmon blocked access to it. Michael further testified that the general *768 public had used the road to access fields and to hunt.
Jimmy Singleton, the previous owner of the part of Garmon’s land over which the disputed roadway runs, testified that he had farmed the property from 1977 until 1998, when he rented it to Garmon; Gar-mon bought the property from Singleton in 2000. According to Singleton, when the county paved the road that runs from the highway to the beginning of the disputed roadway in 1977, the county had to obtain a right-of-way in order to pave the road and have the road dedicated to the public. Singleton testified that he had never considered the disputed roadway to be a public road and that, before he purchased the property, he had used the disputed roadway only with the permission of the then owner of the property. According to Singleton, he was the only person who had performed any maintenance work on the roadway during the time he had owned the property. Singleton stated that the disputed roadway was not passable in an automobile but that it was passable in a four-wheel-drive truck or a truck pulling a cattle trailer. Singleton testified that the disputed roadway had been his private road; however, he also stated that “he was not a stickler” about requiring people to get permission to use the disputed roadway and that “[i]f anyone wanted to ride up [the disputed roadway], they were welcome to drive up there.” According to Singleton, he did not erect any barriers at the end of the paved road blocking access to the disputed roadway.
Billy Ray Pierce testified that he had repaired the disputed roadway for Garmon in 2000. According to Pierce, at that time the disputed roadway was washed out and was almost impassable. Pierce testified that, although he would not have wanted to drive his truck down the disputed roadway, it was possible to drive a truck down the disputed roadway.
John Bates, the assistant county engineer for the county highway department, testified that the county did not consider the disputed roadway to be a county road and that the county had never performed any maintenance on the disputed roadway. Bates also testified that the county maps show only the paved road, not the disputed roadway. Bates could not expi’ess an opinion on the past condition of the disputed roadway.
On June 12, 2008, the trial court entered a judgment declaring that the disputed roadway is not a public road. The trial court’s judgment did not address ownership of the disputed parcel of property. Laney filed a postjudgment motion, alleging that Garmon had not presented sufficient evidence to support the trial court’s judgment determining that the disputed roadway had been abandoned for the requisite 20 years. The trial court denied Laney’s postjudgment motion. Laney appealed to the Alabama Supreme Court, and that court transferred that appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
This court dismissed Laney’s appeal as being from a nonfinal judgment because the trial court had failed to address the ownership of the disputed parcel of property. Laney v. Garmon, 25 So.3d 478, 480 (Ala.Civ.App.2009). We also noted that the county was an indispensable party to the action and that it had not been joined as a party. Laney, 25 So.3d at 480 n. 1.
Thereafter, the trial court held a hearing, at which the parties testified that La-ney owned the disputed parcel of property. The county was also added as a party to the action. The trial coui't then entered a judgment, declaring that Laney owned the disputed parcel of property and adopting and re-entering its June 12, 2008, judg *769 ment. Laney subsequently appealed to our supreme court, and that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.

Issues

Laney raises one issue in his appeal: whether the trial court had sufficient evidence to support its determination that the disputed roadway had been abandoned as a public road.

Standard of Review

The trial court entered its judgment after hearing ore tenus evidence.
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). “‘The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).

Analysis

Laney argues that the evidence was insufficient to support the trial court’s determination that the disputed roadway had been abandoned.
“A public road may be abandoned in one of several ways: (1) by a formal, statutory action; (2) by nonuse for a period of 20 years; and (3) where one road replaces another, by an abandonment of the public road caused [by] nonuse for a period short of the time of prescription.”
Fox Trail Hunting Club v. McDaniel, 785 So.2d 1151, 1154 (Ala.Civ.App.2000). In this case, Garmon alleged that the disputed roadway had been abandoned because, Garmon said, it had not been used by the public for a period exceeding 20 years. Garmon bore the burden in the trial court of proving by clear and convincing evidence that the disputed roadway is no longer a public road. Autry v. Clarke County, 599 So.2d 590, 591 (Ala.1992).
The testimony in this case shows that before Garmon blocked access to the disputed roadway in 2000, it was infrequently used, it was in a bad state of repair, and it was not maintained by the county. However, even the combination of those facts is insufficient to prove by clear and convincing evidence that the disputed roadway had been abandoned as a public road. See Ayers v. Stidham, 260 Ala. 390, 392, 71 So.2d 95, 97 (1954). The Alabama Supreme Court has stated that
“the law lays down no fixed rule as to the quantum of travel over the road essential to impress upon it a public use. Although the chief user be a few families having special need therefor, this does not of necessity stamp it as a private way. It is the character rather than the quantum of use that controls. It seems clear enough that the general public, including these with special interests, have continuously used the road without let or hindrance as they had occasion so to do, and such combined use has been so constant and continuous as to mark at all times a well-defined highway for ve- *770 hieles and pedestrians. As to public user this is sufficient.”
Still v. Lovelady, 218 Ala. 19, 20, 117 So. 481, 482 (1928). Thus, the fact that the disputed roadway was infrequently used and generally used only by those who had a special need to do so by virtue of owning nearby land, or desiring to hunt or cut timber on nearby land, is insufficient to prove that the disputed roadway is a private road. See Fox Trail, 785 So.2d at 1154 (holding that a road remained a public road even though its use had decreased substantially and even though it was used only by local landowners, hunters, and timber harvesters). We also note that Singleton testified that, when he owned the property over which the disputed roadway runs, access to the disputed roadway had not been blocked and anyone who so wished could drive on the disputed roadway. A public road is not considered abandoned “so long as it is open for use by the public generally and is being used by those who desire, or have the occasion to use it.” Auerbach v. Parker, 544 So.2d 943, 946 (Ala.1989).
The fact that the county did not consider the disputed roadway to be a county road and that it did not maintain the disputed roadway is also insufficient to prove abandonment. “[I]t is not essential to the status of a public road that it be maintained by the county in which the road is located.” Fox Trail, 785 So.2d at 1154. Similarly, the fact that the disputed roadway was in a state of disrepair is also insufficient to prove that it had been abandoned. Ayers, supra; Fox Trail, supra. Therefore, the evidence before the trial court indicating that the disputed roadway had been infrequently used, that is had been in bad repair, and that it had not been maintained by the county was insufficient to prove by clear and convincing evidence that the disputed roadway had been abandoned as a public road.

Conclusion

Because the evidence was insufficient to prove that the disputed roadway is no longer a public road, the judgment of the trial court is reversed insofar as it determined that the disputed roadway had been abandoned as a public road, and the cause is remanded to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.