MOORE, Judge.
 

 Beverly Renee Shewbart (“the wife”) appeals from a judgment divorcing her from John Michael Shewbart (“the husband”). We affirm in part, reverse in part, and remand.
 

 Procedural Background
 

 After a 16-year marriage, the parties separated in December 2006, and, on January 11, 2007, the husband filed a complaint for a divorce. On June 27, 2008, the trial court conducted an ore tenus hearing. On July 10, 2008, the trial court entered a “Final Decree of Divorce.” In that judgment, the trial court awarded the parties joint legal and joint physical custody of their 17-year-old daughter, made no award of child support, divided the marital estate, and made no award of alimony. The wife appealed.
 

 Factual Background
 

 The evidence introduced at the trial established the following. The husband and the wife married in May 1990. At that time, both the husband and the wife worked full-time. The wife and her son from a prior marriage moved into a mobile home owned by the husband that was located on 3.5 acres of land owned by the husband.
 

 Within a few months, the wife became pregnant with the parties’ daughter. The wife testified that, during that pregnancy, she stopped working because of medical complications caused by high blood pressure. While the wife was still pregnant, the parties purchased a house (“the marital residence”) for $35,000; the wife was still living in that house at the time of the trial. After giving birth to the daughter on April 17, 1991, the wife did not accept full-time employment again but served primarily as a full-time mother and housewife.
 

 At some point in the mid-1990s, the husband started a restaurant and catering business known as “Swamp John’s” in Red Bay. The wife was involved, but assisted to
 
 *226
 
 only a limited degree, in starting that business. Although the husband was still employed elsewhere when he started Swamp John’s, he eventually lost his main job as the result of a layoff, and, thereafter, he devoted his full-time energies to Swamp John’s.
 

 By 2002, the parties had fully paid for the marital residence. The husband obtained a line of credit in May of that year using the marital residence as collateral. On the application for the line of credit, the husband estimated the value of Swamp John’s as $300,000 and indicated that he received $4,500 per month in wages or salary from the business. At the time of the trial, the line of credit had a balance of $74,681.
 

 During the course of the marriage, the wife developed various medical conditions, including herniated disks in her neck and back, chronic back pain and permanent nerve damage, high blood pressure, a thyroid condition, bipolar disorder, abnormal heart beat, attention deficit disorder, ulcer and stomach problems, and sleep problems. The wife took multiple medications for those conditions. The wife testified that she could not work because of her medical conditions.
 
 [1]
 
 The husband testified that he did not know what bipolar disorder was, but he complained that the wife had extreme mood swings. The husband characterized the wife as a hypochondriac and testified that she exaggerated her medical conditions. The husband stated that he believed the wife could work and support herself.
 

 The husband testified that, in December 2006, the wife cursed at him and at the parties’ daughter, who was then 15 years old. The husband and the daughter then moved out of the marital residence, and, shortly thereafter, the husband filed for a divorce. The wife denied cursing at the daughter and claimed that the husband had somehow convinced the daughter to leave with him. At the time of the trial, the husband was living in a shop located “on the line” between property owned jointly by the husband and his father and property owned by the husband’s parents. The husband’s father had added two bedrooms and a kitchen to the shop to make it livable for the husband and the parties’ daughter. The husband did not financially contribute to the costs incurred to modify the shop, and he was not paying rent to live in the shop. By the time of the trial, the daughter had turned 17 years old and was residing 3 nights a week with the husband in the shop and 4 nights a week with the wife in the marital residence. The husband admitted that the wife and the daughter had a close relationship.
 

 By the time of the trial, the husband’s business interests had expanded. The husband was operating the original location of Swamp John’s in Red Bay as a sole proprietorship under the name “John Shewbart d/b/a Swamp John’s Restaurant & Catering.” The husband and four other shareholders incorporated Swamp John’s, Inc., to operate a franchise located in Muscle Shoals and Swamp John’s of Huntsville, Inc., to operate a franchise located in Huntsville.
 
 [2]
 
 Additionally, the husband and those same shareholders became members in Swamp John’s Intellectual Property, LLC, which they created to license the use of Swamp John’s intellectual property and to grant franchise rights, and in Swamp
 
 *227
 
 John’s Investments, LLC, which they created to purchase property in Huntsville; at the time of the trial, the latter LLC was leasing property to the Huntsville franchise. The husband held the following interests in those businesses:
 

 John Shewbart d/b/a Swamp John’s Restaurant
 
 &
 
 Catering (sole proprietorship) 100%
 

 Swamp John’s, Inc. 26.5%
 

 Swamp John’s of Huntsville, Inc. 20%
 

 Swamp John’s Intellectual Property, LLC 25%
 

 Swamp John’s Investments, LLC 20%
 

 Jonathan Cooper, one of the shareholders/members in the various corporations and LLCs, testified that the husband received $1,500 per month in dividends from his interests in the those entities.
 

 At the trial, the parties disputed the value of the sole proprietorship. The wife noted that the husband had listed the value of the sole proprietorship as $800,000 in 2002. The husband testified that he had merely estimated the value in 2002 and that he did not believe the sole proprietorship was worth $300,000 at the time of the trial. He testified that his sister owned the building from which the sole proprietorship operated and that used cooking equipment and the trailers and vehicles used in catering jobs, worth a total of $14,000, constituted the only material assets of that business.
 

 However, the wife introduced income-tax returns showing Swamp John’s averaged gross sales between 2003 and 2007 of $1.3 million and averaged a net profit during those years of approximately $27,000. The wife also elicited statements from the husband in pretrial discovery indicating that the husband earned $1,500 a week from the sole proprietorship. The wife’s attorney also questioned the husband regarding cash and coin deposits indicated on his checking-account statements that totaled approximately $5,000 per month. The husband admitted that he routinely withheld cash from the business and used those funds for personal expenses, but he denied that it was as much as $1,500 a week. He testified that he provided money for his daughter each week and that “I usually keep a couple hundred for me to get by on, I give [the wife] $250 a week. And otherwise, expenses are wrote [sic] out of checks from the account.”
 

 The husband testified that, at the time of the trial, he owned the following real property:
 

 (a) the marital residence where the parties had lived since the first year of their marriage, which an expert real-estate appraiser valued at $110,000;
 

 (b) a 3.5-acre tract of land on which the parties had previously lived, which the husband valued at $10,000;
 

 (c) a 68-acre tract of land that the husband had received as a gift from his parents during the parties’ marriage (no evidence was presented indicating that this property had been used for the benefit of the parties or the marriage);
 

 (d) a 60 +-acre tract of land that the husband owned jointly with his father, which the husband valued at between $60,000 and $66,000 and the wife valued at $71,300; the husband testified that he owed his father $20,000 for having purchased the property and having deeded one-half of the property to the husband; and
 

 (e) a 6-acre tract of undeveloped land located adjacent to Swamp John’s in Red Bay (the sole proprietorship), which the husband valued at $10,000.
 

 The evidence also established that the husband held the following bank accounts or other assets:
 

 (a) a checking account with deposits from the sole proprietorship totaling approximately $10,000;
 

 (b) a personal checking account with deposits totaling approximately $1,000;
 

 
 *228
 
 (c) a personal savings account with deposits totaling approximately $1,000;
 

 (d) a joint account with the daughter with deposits totaling approximately $1,400;
 

 (e) a college account for the daughter valued at approximately $15,000;
 

 (f) an individual-retirement account that the husband had accrued during his previous employment valued at approximately $12,000; and
 

 (g) a $500,000 life-insurance policy with a surrender cash value of $4,200.
 

 At the time of the trial, the husband owed the following debts:
 

 (a) the $74,600 debt borrowed against the marital residence;
 

 (b) the husband’s personal guarantee on the debt owed by Swamp John’s of Huntsville, Inc.;
 

 (c) a $5,000 obligation owed on the building out of which the Swamp John’s catering business operated;
 

 (d) an $18,000 balance owed on the parties’ daughter’s car; and
 

 (e) $20,000 owed to the husband’s father on the 60 +-acre tract the husband and his father owned jointly and on which the husband was living.
 

 The husband submitted no evidence of his postdivorce monthly expenses. The wife estimated that she would need more than $3,400 each month to support herself. The wife estimated that more than $1,300 of her monthly budget would be required to cover health-insurance, medical, and prescription costs. The wife denied that she could maintain employment because of her health conditions. The wife requested custody of the parties’ daughter, child support, alimony, and an equitable division of the marital estate.
 

 On July 10, 2008, the trial court entered its “Final Decree of Divorce.” The trial court awarded the parties joint legal and joint physical custody of the parties’ daughter and awarded no child support. The trial court granted the wife possession of the marital residence until the daughter reached the age of majority, at which time the marital residence is to be sold, with the parties to share equally in any net proceeds derived from the sale after the balance on the line of credit and costs of the sale are paid. The trial court ordered the husband to continue making the payments on the line of credit until the marital home was sold.
 

 The trial court awarded the wife $5,000 for her interest in the 3.5-acre tract of land on which the parties had lived when they were first married and awarded the husband title to that property. The trial court awarded the six-acre tract of land acquired during the marriage to the husband but awarded the wife $5,000 for her interest in that property. The trial court found that the husband had $13,000 equity in the 60 +-acre tract of land that he owned jointly with his father; the trial court awarded that property to the husband but awarded the wife $6,500 for her interest in that property. The trial court found that the 68-acre tract of land gifted to the husband by his parents was not a marital asset to be divided.
 

 Additionally, the trial court awarded the husband the funds in his individual-retirement account and ordered the husband to surrender his life-insurance policy and to immediately pay the wife the $4,200 cash value of that policy. The trial court awarded the husband the parties’ Ford pick-up truck and Ford Bronco sport-utility vehicle; the wife was awarded the parties’ Lincoln Navigator vehicle.
 

 The trial court noted the parties’ dispute regarding the value of the husband’s business interests. The trial court valued the husband’s sole proprietorship at $14,000
 
 *229
 
 and awarded the wife $7,000 for her interest in that business. The trial court also awarded the wife one-half of the $10,000 in the sole proprietorship’s checking account. The trial court considered Swamp John’s, Inc., and Swamp John’s of Huntsville, Inc., together and concluded that, when considered as a whole, those two corporations constituted a liability, rather than an asset, for the husband. The trial court determined the wife’s share of the marital estate to be $28,500 and ordered the husband to pay the wife $250 per week for 114 weeks in order to satisfy her equity in the marital estate.
 
 [3]
 

 Child Custody
 

 The wife first takes issue with the trial court’s awarding the parties joint physical custody of the parties’ daughter. The wife argues that the trial court should have awarded her sole physical custody of the parties’ daughter because, she says, the 17-year-old daughter spends more time with her than with the husband, she and the daughter are close, the husband presented no evidence as to any special closeness between him and the child, and the husband presented no reasons why he should receive joint custody. The wife denied that the parties had requested joint custody.
 

 “This court has limited review in custody matters when the evidence was presented ore tenus.
 
 Alexander v. Alexander,
 
 625 So.2d 433, 434 (Ala.Civ.App.1993). In determining matters of child custody, a trial court is afforded great discretion; its judgment is ‘presumed correct and will not be disturbed on appeal absent an abuse of discretion or where it is shown to be plainly and palpably wrong.’
 
 Id.
 
 at 434.
 

 “... In custody cases in which custody has not previously been determined by the court, the appropriate standard of review is the best interest of the child.
 
 Ex parte Couch,
 
 521 So.2d 987, 989 (Ala.1988).”
 

 Morgan v. Morgan,
 
 964 So.2d 24, 27 (Ala.Civ.App.2007).
 

 “[I]n an original divorce action, the parties stand on an equal footing and no presumption of entitlement to custody inures to either parent.
 
 See Smith v. Smith,
 
 727 So.2d 113, 114 (Ala.Civ.App.1998). The trial court’s paramount concern, and the correct standard for it to apply in making an initial child-custody determination, is the best interests and welfare of the children at issue.
 
 See Ex parte Couch,
 
 521 So.2d 987, 989 (Ala.1988);
 
 see also C.B.B. v. J.S.D.,
 
 831 So.2d 620, 621 (Ala.Civ.App.2002).”
 

 Brattmiller v. Brattmiller,
 
 975 So.2d 359, 363 (Ala.Civ.App.2007).
 

 In
 
 Ex parte Devine,
 
 398 So.2d 686, 696-97 (Ala.1981), our supreme court stated the following as appropriate considerations for a trial court in making a custody award:
 

 “The sex and age of the children are indeed very important considerations; however, the court must go beyond these to consider the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the
 
 *230
 
 interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available alternatives; and any other relevant matter the evidence may disclose.”
 

 In this case, the trial court could have determined from the evidence presented that a joint-custody award served the best interests of the daughter. The testimony established that the parties had previously allowed the daughter a flexible schedule of nearly equal time between the parties’ homes. Both parties testified that a flexible schedule was most appropriate for the daughter. The trial court could also have concluded that, because of the daughter’s age and because the daughter spent a significant amount of time with each parent, neither parent should be designated the primary physical custodian. For those reasons, we find no reversible error in the trial court’s custody award.
 

 Child Support
 

 The wife next asserts that, even if this court affirms the joint-custody award, the trial court still exceeded its discretion in failing to award her child support. The wife argues that Rule 32(b)(9), Ala. R. Jud. Admin.,
 
 [4]
 
 applies; however, that subdivision addresses split custody rather than joint custody, which is not addressed in the Alabama Rules of Judicial Administration. In
 
 Allen v. Allen,
 
 966 So.2d 929 (Ala.Civ.App.2007), this court stated:
 

 “The trial court may use the split-custody method only when ‘ “each parent has primary physical custody of one or more children.” ’
 
 Boatfield v. Clough,
 
 895 So.2d 354, 357 (Ala.Civ.App.2004) (quoting Rule 32(B)(9), Ala. R. Jud. Admin.).
 

 “ ‘[0]ur Supreme Court has not seen fit to direct the use of [the split-custody] method in joint-custody situations; instead, the Guidelines “do not specifically address the problem of establishing a support order in joint legal custody situations,” although such custodial arrangements, as we have noted, “may be considered by the court as a reason for deviating from the guidelines,” especially “if physical custody is jointly shared by the parents.” ’
 

 “Boatfield,
 
 895 So.2d at 357 (quoting Comment, Rule 32, Ala. R. Jud. Admin.).”
 

 Allen,
 
 966 So.2d at 932-33.
 

 As recognized in
 
 Allen,
 
 joint custody, which was awarded in this case, is not a form of split custody; therefore, the trial court did not err in failing to calculate child support pursuant to the method set forth in Rule 32(B)(9), Ala. R. Jud. Admin.
 

 The wife next argues that the trial court did not provide a reason for its deviation from the child-support guidelines. Thus, she argues, the trial court failed to comply with Rule 32, which is mandatory. We must disagree with the wife. Rule 32(A)(1)(a), Ala. R. Jud. Admin., provides that a trial court may, in its discretion,
 
 *231
 
 deviate from the child-support guidelines under certain circumstances. Shared physical custody is a recognized basis for such a deviation.
 
 See
 
 Rule 32(A)(1)(a), Ala. R. Jud. Admin. In this case, the trial court stated in its divorce judgment that it was not awarding child support because it was awarding joint custody to the parties. Thus, the trial court provided a proper justification for deviating from the child-support guidelines.
 

 Property Division and Alimony
 

 The wife next argues that the trial court erred in its division of the marital estate. She also appeals from the trial court’s failure to award her alimony.
 

 “The purpose of the division of marital property is to give ‘each spouse the value of [his or her]
 
 interest in the marriage.
 
 Each spouse has a right, even a property right in this.’ ”
 
 Lo Porto v. Lo Porto,
 
 717 So.2d 418, 421 (Ala.Civ.App.1998) (quoting
 
 Pattillo v. Pattillo,
 
 414 So.2d 915, 917 (Ala.1982)). The purpose of alimony is “to preserve, insofar as possible, the economic status quo of the parties as it existed during the marriage even though the marriage is judicially terminated.”
 
 Dees v. Dees,
 
 390 So.2d 1060, 1064 (Ala.Civ.App.1980).
 

 In
 
 Dunn v. Dunn,
 
 891 So.2d 891, 894 (Ala.Civ.App.2004), this court set forth the standard of review applicable to a trial court’s division of property in a divorce action:
 

 “Generally, a trial court is afforded a wide degree of discretion in dividing the marital assets of the parties upon divorce.
 
 Moody v. Moody,
 
 641 So.2d 818 (Ala.Civ.App.1994). The only limitation on that discretion is that the division of property be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court.
 
 Ross v. Ross,
 
 447 So.2d 812 (Ala.Civ.App.1984). In making the division, the trial court may consider several factors, including the parties’ respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property.
 
 Lutz v. Lutz,
 
 485 So.2d 1174 (Ala.Civ.App.1986). The property division made by the trial court will not be set aside on appeal absent a palpable abuse of the trial court’s discretion.
 
 Id.”
 

 This court must consider the issues of property division and alimony together when reviewing the decision of the trial court.
 
 Albertson v. Albertson,
 
 678 So.2d 118, 120 (Ala.Civ.App.1995). “[TJhere is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.”
 
 Yohey v. Yohey,
 
 890 So.2d 160, 164 (Ala.Civ.App.2004). In
 
 Lackey v. Lackey,
 
 18 So.3d 393 (Ala.Civ.App.2009), this court stated:
 

 “ ‘When dividing marital property and determining a party’s need for alimony, a trial court should consider several factors, including “ ‘the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.’ ”
 
 Ex parte Elliott,
 
 782 So.2d 308 (Ala.2000) (quoting
 
 Nowell v. Nowell,
 
 474 So.2d 1128, 1129 (Ala.Civ.App.1985)) (footnote omitted). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage.’ ”
 

 Lackey,
 
 18 So.3d at 401 (quoting
 
 Baggett v. Baggett,
 
 855 So.2d 556, 559 (Ala.Civ.App.2003)).
 

 The wife argues that the trial court exceeded its discretion in dividing the marital property. According to the wife, the
 
 *232
 
 marital estate totaled approximately $450,000, of which she received only $28,500, or a mere 6%. In deriving the $450,000 figure, the wife attributes $300,000 as the value of the sole proprietorship.
 
 [5]
 
 The wife maintains that the trial court exceeded its discretion in valuing that business at only $14,000. We agree.
 

 In making its property division, the trial court noted that the husband’s sister owned the building out of which the sole proprietorship had been operating and that the only other assets belonging to the sole proprietorship consisted of trailers and used cooking equipment. The trial court accepted the husband’s testimony that those assets were worth $14,000 and awarded the wife one-half of that amount, along with one-half of the moneys held in the bank account of the sole proprietorship. That valuation entirely ignores the income produced by the sole proprietorship.
 

 Based on the evidence before the trial court, it cannot be disputed that the sole proprietorship has provided a significant and consistent stream of income sufficient to support this family for many years and has consistently produced a profit. That substantial stream of income continued to the date of the trial, and the evidence indicates that it will continue into the future. In
 
 Birmingham News Co. v. Horn,
 
 901 So.2d 27, 65-66 (Ala.2004),
 
 overruled on other grounds, Horton Homes, Inc. v. Shaner,
 
 999 So.2d 462 (Ala.2008), our supreme court recognized the following:
 

 “ ‘It is well accepted that the fair market value of a privately held business is estimated to be the
 
 largest
 
 of the values determined by the following three methods:
 

 “ ‘(1) Income Approach: the net present value of the business’s profits;
 

 “ ‘(2) Asset Approach: the difference between the market value of its assets and liabilities; or
 

 “ ‘(3) Market Approach: the comparable fair market value of the business as determined by either comparable publicly traded corporations or comparable companies purchased in whole. Unless the company has significant asset holdings such as real estate, securities, or natural resources, the first or third method usually generates the largest value.’
 

 “George P. Roach,
 
 Correcting Uncertain Prophecies: An Analysis of Business Consequential Damages,
 
 22 Rev. Litig. 1, 11-12 (Winter 2003) (emphasis added; footnotes omitted).”
 
 [6]
 

 In this case, in valuing the sole proprietorship, the trial court did not take into account any of the income derived from the business. The wife maintains that the trial court should have concluded
 
 *233
 
 that, when that income is considered, the business is worth $300,000, not $14,000. We do not hold that the trial court must accept the wife’s valuation figures, but we do hold that the trial court must assess some value to the business apart from the value of the materials used in the business. We therefore reverse that portion of the trial court’s judgment and remand the cause for the trial court to determine the fair-market value of the sole proprietorship, taking into consideration all of its assets, and to then consider that value in fashioning an equitable division of the marital property. Because property division and alimony awards are interrelated and are to be considered together,
 
 see Lackey,
 
 18 So.3d at 401, we also instruct the trial court to reconsider, in light of any new property division entered, whether the wife is entitled to an award of alimony.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, J., concur.
 

 BRYAN and THOMAS, JJ., concur in the result, without writings.
 

 [1]
 

 . Additionally, during the pendency of this divorce, the wife’s gallbladder was surgically removed.
 

 [2]
 

 . The evidence indicated that another corporation had been formed — Swamp John’s of Florence, Inc.- — and that that corporation had intended to open another restaurant but that those plans had stalled.
 

 [3]
 

 . This $28,500 total did not include the $4,200 the trial court ordered the husband to immediately pay to the wife.
 

 [4]
 

 . By order dated November 19, 2008, the Alabama Supreme Court amended Rule 32, Ala. R. Jud. Admin., including the child-support guidelines, effective January 1, 2009. By order dated February 25, 2009, the Alabama Supreme Court amended Rule 32(A)(4) and Rule 32(B)(7), Ala. R. Jud. Admin., effective March 1, 2009. Those amendments are not applicable in this case.
 

 [5]
 

 . In her brief to this court, the wife makes no argument regarding the trial court's valuations of the corporations and the LLCs; therefore, we accept the trial court's valuations as to those entities as accurate.
 

 [6]
 

 . For other information concerning business valuation,
 
 see
 
 Robert J. Rivers, Jr., "The 'Double-Dipping' Concept in Business Valuation For Divorce Purposes," Massachusetts Bar Association (2006); on the date this opinion was released, a copy of this article could be found at http://www.massbar.org/for-attorneys/publications/section-review/2006/v 8-n3/the-doubledipping-concept-in-business-valuation-for-divorce-purposes (as visited on March 27, 2009; a copy of this article is available in the case file of the clerk of the Alabama Court of Civil Appeals). That article recognized that
 

 "It is basic valuation theory that the value of a business is equal to the present worth of the
 
 future
 
 benefits of ownership.
 

 [[Image here]]
 

 "This fundamental theory of business valuation is sometimes misinterpreted by courts due to the misconception that business valuation is based upon an averaging of
 
 past
 
 income, rather than a projection as to what the
 
 future
 
 income will be based
 
 *233
 
 upon a review of the historical earnings of the company. ... [T]he role of past earnings is simply to provide an indication as to projected future earnings. ...
 

 "When valuing a business using either the capitalization of earnings method or an excess earnings method, the role of the business valuation expert is to determine the value of two separate components of value, namely ‘tangible’ and ‘intangible’ assets. While tangible assets, such as equipment, inventory and accounts receivable, are easily identifiable, intangible assets are much more subtle. Among the principal intangible assets that are analyzed in the context of business valuation is business goodwill. The term goodwill is commonly defined as the 'expectation of continued public patronage.’ Miod,
 
 The Double-Dip in Valuing Goodwill in Divorce,
 
 Miod & Co. LLP (1999). This definition leads to the logical conclusion that business goodwill is essentially the ability of an owner to enjoy
 
 future
 
 benefits from the business.
 
 See
 
 Pratt, Reilly & Schweihs,
 
 Valuing Small Businesses and Professional Practices,
 
 2d. ed., p. 410-11 (Irwin Professional Publishing 1993) (among the biggest factors contributing to goodwill value in a professional practice is the projected level of economic earnings).”