BRYAN, Judge.
 

 Dennis E. Blasdel (“the husband”) appeals from a judgment entered by the Limestone Circuit Court (“the trial court”) that divorced him from Jennifer L. Blasdel (“the wife”) insofar as the judgment divided the parties’ property.
 

 Procedural History
 

 This- is the second time these parties have appeared before this court. In
 
 Blasdel v. Blasdel,
 
 27 So.3d 1288 (Ala.Civ.App. 2009), we dismissed the husband’s appeal as being from a nonfinal judgment because the trial court had not finally resolved the issue of child support in its initial divorce judgment.
 

 The record on appeal reveals the following. The parties married in February 1995 and separated in August 2007. The husband sued the wife for a divorce and alleged that the parties had entered into a valid antenuptial agreement and asked for a division of property pursuant to that agreement. The husband also stated that he and the wife jointly owned a corporation known as Triangles Energy Consulting, Inc. (“TEC”), and he asked the trial court to “award [the parties] an interest in the ... assets and debts the corporation has in accordance with the percentage of ownership each party holds” in the corporation. The wife filed a counterclaim for a divorce, and she denied that there was a valid and enforceable antenuptial agreement. Regarding the parties’ interests in TEC, the wife requested that the trial court award each party an interest in the assets and debts of the corporation in accordance with the percentage of ownership each party held in the corporation.
 

 The husband filed a motion for a partial summary judgment, seeking an order that the parties’ antenuptial agreement was valid and enforceable in the divorce action. After a hearing, the trial court granted the husband’s motion and held that the ante-nuptial agreement was valid and binding on the parties. That agreement stated, in pertinent part:
 

 “NOW, THEREFORE, for and in consideration of said marriage contemplated by the parties and the mutual covenants and agreements herein, and other good and valuable consideration as set forth herein, the parties hereto do hereby agree as follows ...:
 

 “1. PARTIES hereto do agree that the following is and shall remain the sole, separate and unique property of [the husband] and such property is the sole, separate and unique property of [the husband] at the time of entrance into this Agreement:
 

 “See Exhibit ‘A’ attached hereto for a list of property.[
 
 1
 
 ]
 

 
 *430
 
 “All of which is hereinafter referred to as ‘PROPERTY OF THE [HUSBAND].’
 

 “2. PARTIES hereto do agree that the following is and shall remain the sole, separate and unique property of [the wife] and such property is the sole, separate and unique property of [the wife] at the time of entrance into this Agreement:
 

 “See Exhibit ‘B’ attached hereto for a list of property.[
 
 2
 
 ]
 

 “All of which is hereinafter referred to as ‘Property of the [wife]’
 

 “4. ... The parties hereto ... agree that the property of [the husband] shall remain the sole, separate and unique property of [the husband], even though the same may be converted into a different form by the sale, disposal or other exchange of the property of the [the husband] and that the property of the [the wife] shall remain the sole, separate and unique property of the [the wife], even though the same may be converted into a different form by the sale, disposal or other exchange of the property of the [the wife]. Property of the [the husband] shall not be subject to a claim of any type by [the wife] in the event of termination of this marriage by death or divorce, and property of the [the wife] shall not be subject to a claim of any type by the [the husband] in the event of termination of this marriage by death or divorce.
 

 “5. Any property, real or personal, purchased or accumulated after the marriage and held in the parties’ joint names shall not be controlled by this Agreement.
 

 “6. ... If ... this marriage should become dissolved by divorce, neither party shall hold or claim any interest or part in the estate or property of the other by the way of curtesy, dower, homestead, family allowance, or other rights and
 
 will make no claim to the individually owned property of the other in any divorce proceedings
 
 ....
 

 “14. THIS AGREEMENT limits and fixes the rights of both parties in the property now owned or hereafter acquired by either, whether the marriage relationship is terminated by death, legal proceedings, or otherwise.”
 

 (Capitalization in original.)
 

 After conducting an ore tenus hearing, the trial court entered a judgment of divorce. In that judgment, the trial court awarded the parties joint legal custody of their child, awarded the husband sole physical custody of the child, and awarded the wife specific visitation. The husband was awarded the parties’ interests in TEC, and the wife was awarded $100,000 for her interest in TEC. The trial court found that the parties had a joint interest in 32 pieces of personal property, and the husband was awarded that personal property. The trial court ordered the husband to pay the wife $35,000 as her equitable interest in the 32 pieces of jointly owned personal
 
 *431
 
 property awarded to the husband. The trial court also awarded the wife several pieces of personal property, including a 1998 Mercedes automobile (“the Mercedes”). Any personal property not specifically awarded to either party was awarded to the husband.
 

 Neither party filed a postjudgment motion, and the husband timely appealed. As stated above, this court dismissed the husband’s first appeal as being from a nonfi-nal judgment.
 
 See Blasdel v. Blasdel, supra.
 
 The trial court subsequently entered an order requiring the wife to pay child support to the husband and establishing the wife’s child-support arrearage. The husband timely filed an appeal from the final judgment of divorce.
 

 On appeal, the husband raises three issues for this court’s review: (1) whether the trial court erred by awarding the wife $100,000 for her interest in TEC; (2) whether the trial court erred by awarding the wife the Mercedes; and (3) whether the trial court erred by awarding the wife $35,000 for her interest in personal property awarded to the husband.
 

 This court’s standard of reviewing a division of property pursuant to a judgment of divorce following ore tenus proceedings is well settled:
 

 “ ‘ “ ‘[Wjhen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’
 
 Water Works & Sanitary Sewer Bd. v. Parks,
 
 977 So.2d 440, 443 (Ala.2007) (quoting
 
 Fadalla v. Fadalla,
 
 929 So.2d 429, 433 (Ala.2005), quoting in turn
 
 Philpot v. State,
 
 843 So.2d 122, 125 (Ala. 2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’
 
 Wattman v. Rowell,
 
 913 So.2d 1083, 1086 (Ala.2005) (quoting
 
 Dennis v. Dobbs,
 
 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’
 
 Wattman v. Rowell,
 
 913 So.2d at 1086.”
 

 Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.,
 
 985 So.2d 924, 929 (Ala.2007).
 

 On appeal, the husband first argues that the trial court erred by awarding the wife $100,000, which represented the value of the wife’s interest in TEC. It was undisputed that the antenuptial agreement did not apply to the division of the parties’ interests in TEC. The wife owned a 51% interest in TEC, and the husband owned a 49% interest in TEC. The husband, who worked in the nuclear-engineering field, organized TEC, which was a consulting company for power-related companies, in such a manner so that he could take advantage of incentives offered to minority-owned corporations. The husband maintained that, despite the wife’s majority ownership of TEC, the corporation was based on his consulting skills and that TEC would not exist without him. He further alleged, and the wife disputed, that the wife contributed very little to the business activity of TEC.
 

 Roan Bradley, a certified public accountant that prepared tax documents for TEC and for the parties in their individual capacities, testified that she was not qualified to make a valuation of TEC. During two days of trial, the parties presented the trial court with numerous financial documents and financial summaries in an effort to present evidence of the value of TEC. The wife unequivocally stated that she was not interested in controlling TEC after the parties divorced.
 

 
 *432
 
 The husband argues that the trial court’s determination of the value of the wife’s 51% interest in TEC is unsupported by the evidence and that it must be reversed. He also argues that the trial court should have valued TEC using the methods discussed in
 
 Shewbart v. Shewbart,
 
 19 So.Sd 223 (Ala.Civ.App.2009). In
 
 Shew-bart,
 
 this court reversed a trial court’s valuation of a sole proprietorship because the trial court had failed to consider all the assets of the sole proprietorship, including income derived from the business, when making a determination of its fair-market value. 19 So.Sd at 232-33. In doing so, this court quoted the supreme court’s decision in
 
 Birmingham News Co. v. Horn,
 
 901 So.2d 27, 65-66 (Ala.2004) (overruled on other grounds by
 
 Horton Homes, Inc. v. Shaner,
 
 999 So.2d 462 (Ala.2008)), which recognized the following:
 

 “ ‘ “It is well accepted that the fair market value of a privately held business is estimated to be the
 
 largest
 
 of the values determined by the following three methods: [
 
 3
 
 ]
 

 “ ‘ “(1) Income Approach: the net present value of the business’s profits;
 

 “ ‘ “(2) Asset Approach: the difference between the market value of its assets and liabilities; or
 

 “ ‘ “(3) Market Approach: the comparable fair market value of the business as determined by either comparable publicly traded corporations or comparable companies purchased in whole. Unless the company has significant asset holdings such as real estate, securities, or natural resources, the first or third method usually generates the largest value.”
 

 ‘“George P. Roach,
 
 Correcting Uncertain Prophecies: An Analysis of Business Consequential Damages,
 
 22 Rev. Litig. 1, 11-12 (Winter 2003) (emphasis added; footnotes omitted).’ ”
 

 19 So.3d at 232.
 

 According to the husband, if the trial court had used the income approach, TEC’s value would have been $43,078.08 (the net income for the first quarter of 2008 ($10,769.52) multiplied by 4 = $43,078.08). Using the asset approach, he argues, TEC’s value would have been negative $100,306.48 (total assets reported in the first quarter of 2008 ($72,417.40) minus total liabilities reported in the first quarter of 2008 ($172,723.88) = negative $100,306.48). He also argues that insufficient evidence was presented for the trial court to make a determination of the value of TEC pursuant to the market approach. Thus, he argues, the wife was entitled to, at most, $21,969.82 (51% of $43,078.08) as the value of her 51% interest in TEC.
 

 Our review of the record reveals that the husband never argued to the trial court that TEC should be valued using any of the methods discussed in
 
 Birmingham News.
 
 It is well settled that this court will not reverse a trial court’s judgment on the basis of an argument that was not first presented to the trial court.
 
 See Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992). (“This Court cannot consider arguments raised for the first time on appeal_”).
 

 At the final hearing, the majority of the testimony regarding the financial condition of TEC was presented by Bradley. From her testimony it was clear that the parties, from 2003 through 2007, had earned sub
 
 *433
 
 stantial income from TEC, including salary and income distributions. However, the husband also testified that, at the time of the final hearing, TEC was “upside down” and that TEC had a negative net worth of approximately $100,000.
 

 Our review of the evidence presented by the parties fails to lead us to evidence supporting the trial court’s judgment. Although the trial court is generally afforded broad discretion in making factual determinations in ore tenus proceedings, we are unable to ascertain, from our review of the record, how the trial court determined that the value of the wife’s 51% interest in TEC was $100,000. Accordingly, we must reverse that aspect of the divorce judgment and remand the cause with instructions to the trial court to reconsider its valuation of the wife’s interest in TEC and to enter a new judgment indicating the method by which the value of the wife’s 51% interest in TEC is determined.
 
 Cf. Mullins v. Sellers,
 
 58 So.3d 817, 823 (Ala.Civ.App.2010) (reversing a judgment awarding child-support ar-rearage because this court could not determine from the record on appeal how the trial court arrived at its child-support-arrearage award). Because we are reversing the aspect of the divorce judgment that sought to equitably divide the jointly owned property of the parties, we must also reverse those aspects of the divorce judgment that divided the remainder of the jointly owned property of the parties so that the trial court can reconsider its property division in light of its proper valuation of the wife’s interest in TEC.
 
 See Grelier v. Grelier,
 
 44 So.3d 1092 (Ala.Civ.App.2009).
 

 Next, the husband argues that the trial court erred by awarding the wife the Mercedes because it was titled in his name and thus, pursuant to the antenuptial agreement, the wife had no claim to that property. At the final hearing, the wife testified that the husband had purchased the Mercedes using funds from TEC and that the husband had given her the Mercedes as a Christmas gift. The husband denied giving the Mercedes to the wife as a gift and testified that the title to the Mercedes was in his name. Neither party produced the title to the Mercedes at trial. In his brief on appeal, the husband does not address the implications of the wife’s testimony that the Mercedes was a gift to her from the husband. It is well settled that the trial court, as the finder of fact in ore tenus proceedings, is in the best position to resolve disputed testimony.
 
 See Friedman v. Friedman,
 
 971 So.2d 23, 28 (Ala.2007). Based on the evidence presented by the parties, the trial court could have believed the wife’s testimony over the husband’s testimony, and, thus, the trial court could have concluded that the husband had given the wife the Mercedes as a gift. Accordingly, once the husband gave the wife the Mercedes as a gift, it was no longer his individually owned property. Thus, based on the argument presented by the husband on appeal, we conclude that the trial court was not plainly or palpably wrong in awarding the wife the Mercedes.
 
 Cf. Klyce v. Klyce,
 
 429 So.2d 1081 (Ala.Civ. App.1983) (relying on the presumption of correctness attendant to findings of fact in ore tenus proceedings, this court affirmed a trial court’s award of a vehicle to the wife in a divorce action when title to the vehicle was in the name of the husband’s closely held corporation because the wife testified that the husband had given her the vehicle as a gift).
 

 Finally, the husband argues that the trial court erred by considering certain pieces of personal property to be jointly owned when it awarded the wife $35,000 as her equitable interest in the personal property awarded to the husband. In the di
 
 *434
 
 vorce judgment, the trial court found that the husband and the wife had a joint interest in 32 individual items of personal property, including: a 2005 Chevrolet truck and a 1995 Cadillac automobile that were owned by TEC; a 2000 Corvette automobile; a Sea Ray Cruiser boat; and a Ski Nautique 21 boat (the Sea Ray Cruiser and the Ski Nautique 21 will hereinafter be referred to collectively as “the boats”).
 

 At the final hearing, the husband initially testified that the Corvette was titled in the name of TEC; he later testified that he had paid for the Corvette with funds from TEC, that those funds were attributed to him as income, and that the title to the Corvette was in his name. The wife testified that the Corvette was purchased with funds from TEC, but she made no claim that her name was on the title to the Corvette. Bradley testified that only the Cadillac and the Chevrolet truck were listed as assets of TEC. Neither party was able to produce the title to the Corvette at trial. Regarding the boats, the husband testified only that the boats were registered in his name; neither party testified regarding the ownership of the boats.
 

 The husband argues that because the Chevrolet truck and the Cadillac were owned by TEC, the trial court erred by including them when determining the wife’s equitable interest in property that he was awarded because he was already required to pay the wife for her interest in TEC. He also argues that the Corvette and the boats were part of his individually owned property, that the wife did not have a joint interest in those particular items of personal property, and that those items should not have been considered by the trial court when determining the wife’s equitable interest in the property awarded to the husband. In response, the wife argues that, because she had a joint interest in TEC, the trial court did not err in including the Cadillac, the Chevrolet truck, and the Corvette in its determination of her equitable interest in the property awarded to the husband because each of those vehicles was purchased with funds from TEC. She further argues that the husband failed to present sufficient evidence of his individual ownership of the boats.
 

 We agree that the trial court should not have considered the Chevrolet truck or the Cadillac in its determination of the wife’s equitable interest in the personal property awarded to the husband because those vehicles were owned by TEC and should have been included in the determination of the value of the wife’s interest in TEC. We must also agree that the evidence produced at trial does not support a conclusion that the wife had a joint interest in the Corvette. Even if the trial court believed the wife’s testimony that the Corvette had been purchased by TEC, as we stated above the trial court should have included the value of the Corvette in its determination of the value of the wife’s interest in TEC.
 
 [4]
 
 Regarding the boats, however, the trial court could have concluded that the husband’s testimony that he had registered the two boats in his name was insufficient evidence that the boats were owned by the husband in his individual capacity.
 

 Accordingly, we conclude that the trial court erred by considering the Chevrolet truck, the Cadillac, and the Corvette to be jointly owned property for purposes of determining the wife’s equitable interest
 
 *435
 
 in the 32 pieces of jointly owned property awarded to the husband. On remand, the trial court should reconsider the evidence presented and determine whether the Corvette was owned by TEC or by the husband in his individual capacity, and award the property accordingly.
 

 Conclusion
 

 We affirm that part of the divorce judgment that awarded the wife the Mercedes. However, regarding the trial court’s division of jointly owned property and its valuation of the wife’s interest in TEC, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.
 
 [5]
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Exhibit "A" of the parties’ antenuptial agreement contained a list of real and personal property owned by the husband before the parties married. At the time the parties en
 
 *430
 
 tered into the antenuptial agreement, the husband’s real and personal property was valued at $193,300.
 

 [2]
 

 . Exhibit "B’’ of the parties’ antenuptial agreement contained a list of personal property owned by the wife before the parties married. At the time the parties entered into the antenuptial agreement, the wife's personal property was valued at $3,000.
 

 [3]
 

 .
 
 But see Grelier v. Grelier,
 
 44 So.3d 1092 (Ala.Civ.App.2009), where this court determined that, in the context of valuing a divorcing spouse’s interest in a closely held business organization, a trial court should not apply a minority or marketability discount to the fair value of the business organization.
 

 [4]
 

 . However, we make no determination of whether there was sufficient evidence for the trial court to conclude that the 2000 Corvette was purchased by and, therefore, was an asset of TEC.
 

 [5]
 

 . We note that, typically, when this court must reverse one part of a divorce judgment regarding the equitable division of jointly owned property, such as TEC, we remand the case with instructions for the trial court to reconsider its entire division of jointly owned property without discussing other aspects of the division of marital property (or, as the case may be, alimony). However, this case is somewhat unique because the property division in the divorce judgment was, in some respects, subject to the antenuptial agreement, while other aspects of the property division were not controlled by the antenuptial agreement. Furthermore, the issues raised by the husband in this particular appeal sought review of issues that were only indirectly related the trial court’s equitable division of jointly owned property. Thus, we concluded that the most appropriate manner to handle this particular appeal was to address each of the substantive issues raised by the husband. However, our instructions on remand clarify that the trial court should reconsider its entire division of jointly owned property and that it should make an equitable division of the jointly owned property in light of this decision.