On Application for Rehearing

BRYAN, Judge.
This court’s opinion of June 15, 2012, is withdrawn, and the following is substituted therefore.
This is the third time that Dennis E. Blasdel (“the husband”) and Jennifer L. Blasdel (“the wife”) have appeared before this court in an appeal related to the entry of a divorce judgment by the Limestone Circuit Court (“the trial court”). See Blasdel v. Blasdel, 27 So.3d 1288 (Ala.Civ.App.2009) (“Blasdel I ”), and Blasdel v. Blasdel, 65 So.3d 428 (Ala.Civ.App.2010) (“Blasdel II”).

Procedural History

In Blasdel I, we dismissed the husband’s appeal because it was taken from a nonfi-nai judgment. 27 So.3d at 1291. After the trial court entered a final judgment, the husband appealed again, and in Bias-del II we affirmed the judgment in part, reversed the judgment in part, and remanded the cause for further proceedings consistent with the opinion issued by this court. 65 So.3d at 435. In this appeal, the husband challenges the judgment entered by the trial court on remand from this *867 court’s decision in Blasdel II. In Blasdel II, the husband argued that the trial court had erred by determining that the wife’s interest in Triangles Energy Consulting, Inc. (“TEC”), a corporation that was jointly owned by the parties, was valued at $100,000. Id. at 431. This court discussed this issue raised by the husband in Blasdel II as follows:
“The wife owned a 51% interest in TEC, and the husband owned a 49% interest in TEC. The husband, who worked in the nuclear-engineering field, organized TEC, which was a consulting company for power-related companies, in such a manner so that he could take advantage of incentives offered to minority-owned corporations. The husband maintained that, despite the wife’s majority ownership of TEC, the corporation was based on his consulting skills and that TEC would not exist without him. He further alleged, and the wife disputed, that the wife contributed very little to the business activity of TEC.
“Roan Bradley, a certified public accountant that prepared tax documents for TEC and for the parties in their individual capacities, testified that she was not qualified to make a valuation of TEC. During two days of trial, the parties presented the trial court with numerous financial documents and financial summaries in an effort to present evidence of the value of TEC. The wife unequivocally stated that she was not interested in controlling TEC after the parties divorced.”

Id.

In support of his argument that the trial court had erred in valuing the wife’s interest in TEC, the husband argued that the trial court had failed to utilize one of the three valuation methods set forth in Shewbart v. Shewbart, 19 So.3d 223 (Ala.Civ.App.2009) (“Shewbart /”) (quoting Birmingham News Co. v. Horn, 901 So.2d 27, 65-66 (Ala.2004)). However, this court could not consider that argument in Blasdel II because the record revealed that the husband had not first presented the argument to the trial court. Id. at 432 (citing Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992)). In addressing the husband’s argument that the trial court had erred in valuing the wife’s interest in TEC, without considering the argument as to the failure to utilize one of the valuation methods set forth in Shewbart I that he failed to present to the trial court, we concluded:
“At the final hearing, the majority of the testimony regarding the financial condition of TEC was presented by Bradley. From her testimony it was clear that the parties, from 2003 through 2007, had earned substantial income from TEC, including salary and income distributions. However, the husband also testified that, at the time of the final hearing, TEC was ‘upside down’ and that TEC had a negative net worth of approximately $100,000.
“Our review of the evidence presented by the parties fails to lead us to evidence supporting the trial court’s judgment. Although the trial court is generally afforded broad discretion in making factual determinations in ore tenus proceedings, we are unable to ascertain, from our review of the record, how the trial court determined that the value of the wife’s 51% interest in TEC was $100,000. Accordingly, we must reverse that aspect of the divorce judgment and remand the cause with instructions to the trial court to reconsider its valuation of the wife’s interest in TEC and to enter a new judgment indicating the method by which the value of the wife’s 51% interest in TEC is determined. Cf. Mullins v. Sellers, 58 So.3d 817, 823 (Ala.Civ.App.2010) (reversing a judgment awarding child-support arrearage because this court could not determine *868 from the record on appeal how the trial court arrived at its child-support-arrear-age award). Because we are reversing the aspect of the divorce judgment that sought to equitably divide the jointly owned property of the parties, we must also reverse those aspects of the divorce judgment that divided the remainder of the jointly owned property of the parties so that the trial court can reconsider its property division in light of its proper valuation of the wife’s interest in TEC. See Grelier v. Grelier, 44 So.3d 1092 (Ala.Civ.App.2009).”
Id. at 482-33.
Also in Blasdel II, the husband challenged the trial court’s division of certain items of personal property in light of a valid antenuptial agreement that applied to the divorce action. See Blasdel II, 65 So.3d at 430, for a recitation of the pertinent parts of the parties’ antenuptial agreement. In the parties’ divorce judgment,
“[t]he trial court found that the parties had a joint interest in 32 pieces of personal property, and the husband was awarded that personal property. The trial court ordered the husband to pay the wife $35,000 as her equitable interest in the 32 pieces of jointly owned personal property awarded to the husband.”
Id. at 430-31.
Included in the 32 pieces of personal property awarded to the husband were a 2005 Chevrolet truck, a 1995 Cadillac automobile, and a 2000 Corvette automobile. We concluded that
“the trial court should not have considered the Chevrolet truck or the Cadillac in its determination of the wife’s equitable interest in the personal property awarded to the husband because those vehicles were owned by TEC and should have been included in the determination of the value of the wife’s interest in TEC. We must also agree that the evidence produced at trial does not support a conclusion that the wife had a joint interest in the Corvette. Even if the trial court believed the wife’s testimony that the Corvette had been purchased by TEC, as we stated above the trial court should have included the value of the Corvette in its determination of the value of the wife’s interest in TEC....
“Accordingly, we conclude that the trial court erred by considering the Chevrolet truck, the Cadillac, and the Corvette to be jointly owned property for purposes of determining the wife’s equitable interest in the 32 pieces of jointly owned property awarded to the husband. On remand, the trial court should reconsider the evidence presented and determine whether the Corvette was owned by TEC or by the husband in his individual capacity, and award the property accordingly.”
Id. at 434-35 (footnote omitted).
After this court issued a certificate of judgment in Blasdel II, the trial court entered an amended judgment in light of our instructions on remand.[1] In that judgment, the trial court set forth the evidence presented at trial regarding the earned income and income distributions the husband and the wife had received from 2003 through 2007 based on their ownership interest in TEC. The trial court found that the wife earned, on average, $60,770 a year between 2003 and 2007. The trial court further stated that, in considering the value of the corporation, it had also taken into account testimony presented by TEC’s accountant, Roan Bradley, which indicated *869 that TEC was thriving, that it was an ongoing business, and that income and profits of TEC for the coming year could be the best ever. The trial court further found that the 2005 Chevrolet truck, the 1995 Cadillac, and the 2000 Corvette were owned by TEC and that the cumulative value of those three vehicles totaled $44,000. Based on that evidence, the trial court determined that the value of the wife’s equitable interest in TEC was $122,400. The trial court divested the wife of her 51% ownership of TEC, awarded the husband exclusive ownership of TEC, and ordered the husband to pay the wife $122,440 as her equitable interest in TEC.
The trial court also reduced the wife’s equitable interest in the personal property that was awarded to the husband in light of the fact that the values of the 2005 Chevrolet truck, the 1995 Cadillac, and the 2000 Corvette had been accounted for in the valuation of TEC. The trial court reduced the wife’s original award of $35,000 as her equitable interest in the personal property by $22,000 (one-half of the cumulative value of the three vehicles). Accordingly, the husband was ordered to pay the wife $13,000 as her equitable interest in the personal property awarded to the husband ($35,000 - $22,000 = $13,000).
The husband subsequently filed a post-judgment motion arguing, among other things: (1) that the trial court failed to utilize one of the three valuation methods discussed in Shewbart I, supra, and Birmingham News, supra, when making a valuation of TEC; (2) that it was impossible to ascertain how the trial court determined the value of the wife’s equitable interest in TEC; and (3) that the division of property was manifestly unjust and against the great weight of the evidence. The wife subsequently filed a motion to appoint a special master to make a determination as to the value of TEC. Both motions were scheduled for a hearing. The trial court denied the wife’s motion for a special master on August 26, 2011, and the husband’s postjudgment motion was denied by operation of law on September 20, 2011. See Rule 59.1, Ala. R. Civ. P. The husband timely filed a notice of appeal.

Issue

In this appeal, the husband argues that the trial court erred by awarding the wife $122,440 as her equitable interest in TEC. Specifically, he argues that the trial court did not adhere to this court’s instructions on remand in Blasdel II; that the trial court erred by failing to utilize one of the three valuation methods set forth in Shew-bart I, supra; that there is no evidence to support the trial court’s valuation; and that the trial court erred by relying on the historical income of TEC when determining its value.

Standard of Review

“ ““ “[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”’” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). “ ‘The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.’ ” Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). “Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law *870 to the facts.” Waltman v. Rowell, 913 So.2d at 1086.’ ”
Blasdel II, 65 So.3d at 431 (quoting Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007)).

Discussion

First, we will address the husband’s contention that the trial court failed to adhere to our instructions on remand in Blasdel II. As we stated above, in Blasdel II we reversed the trial court’s valuation of the wife’s interest in TEC and instructed the trial court “to reconsider its valuation of the wife’s interest in TEC and to enter a new judgment indicating the method by which the value of the wife’s 51% interest in TEC is determined.” 65 So.3d at 433. In Ex parte Edwards, 727 So.2d 792 (Ala.1998), our supreme court held:
“ ‘ “It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered .... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence.
727 So.2d at 794 (quoting Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983), quoting in turn 5 Am.Jur.2d Appeal & Error § 991 (1962)).
The husband contends that the trial court failed to strictly comply with the instructions on remand because it failed to indicate the method by which it valued the wife’s interest in TEC. We disagree. The trial court entered a detailed judgment in response to our instructions on remand, and, in that judgment, the trial court identified the specific financial information produced by the parties that it had relied on to determine the value of the wife’s interest in TEC. Furthermore, the trial court stated that it had considered testimony from Bradley when making a valuation, and the judgment indicates that the trial court considered the value of the 2005 Chevrolet truck, the 1995 Cadillac, and the 2000 Corvette when it made its determination of the value of the wife’s interest. Accordingly, we conclude that the trial court complied with our instructions on remand because the trial court indicated the method by which it determined the value of the wife’s interest in TEC, and this court is able to ascertain from a review of the record how the trial court arrived at its determination of the value of the wife’s interest in TEC. See discussion, infra.
Next, we will consider the husband’s argument that the trial court erred by failing to utilize one of the valuation methods discussed in ShewbaH I and Birmingham News in making its determination of the value of the wife’s interest in TEC. Assuming that the husband properly preserved this argument for appellate review of the judgment entered on remand, we cannot conclude that the trial court committed reversible error by failing to specifically state in its judgment that it utilized a valuation method set forth in ShewbaH I. In ShewbaH I, we reversed a trial court’s judgment because it valued a sole proprietorship owned by the husband using only the value of the tangible assets of the sole proprietorship, which equaled $14,000. 19 So.3d at 232. This court noted that “the sole proprietorship has provided a significant and consistent stream of income sufficient to support this family for many years and has consistently produced a profit. That substantial stream of income continued to the date of the trial, *871 and the evidence indicates that it will continue into the future.” Id. We then set forth the three valuation approaches that are accepted methods of determining the fair market value of a privately held business, as discussed in Birmingham News, supra: the income approach, the asset approach, and the market approach. Id.[2] We held that the trial court erred by failing to “assess some value to the business apart from the value of the materials used in the business,” and we remanded the cause with instructions to the trial court to determine the fair market value of the sole proprietorship after “taking into consideration all of [the] assets [of the sole proprietorship] ....” Id. at 233.
In Shewbart v. Shewbart, 64 So.3d 1080 (Ala.Civ.App.2010) (“Shewbart II”), the wife filed an appeal from the judgment entered by the trial court on remand from Shewbart I that determined that the value of the sole proprietorship was $69,986 using the income approach. The wife appealed the trial court’s determination that she was entitled to one-half of that amount less the value of one-half of the tangible assets of the sole proprietorship that the wife had already been awarded. To determine the value of the sole proprietorship, the trial court averaged the husband’s income as it appeared on his income-tax returns over a period of three years and multiplied that number by two — a multiple that was determined by the court after hearing testimony from a business-valuation expert indicating that average income was usually multiplied to determine an estimated value of a business under the “income approach.” Id. at 1083-84. During his testimony, the expert had multiplied the husband’s average income by four to determine an estimated value of the sole proprietorship. However, this court held that the trial court had not exceeded its discretion by using only a multiplier of two to determine the value of the sole proprietorship because the trial court considered the long hours the husband worked in the sole proprietorship and the poor economic conditions prevailing in the location of the sole proprietorship. Id. at 1086. Furthermore, although the specific award to the wife had to be reversed because of a mathematical error in the judgment, we concluded that it was permissible for the trial court to award the wife an even dollar amount after “rounding up.” Id. at 1087 n. 5.
In the present case, the trial court determined that the average yearly income the wife received as the 51% owner of TEC over a period of five years was $60,770. If the trial court multiplied the wife’s average yearly income by 1.64 to determine the present value of the projected future earnings of the wife from TEC, the wife’s interest in TEC would be valued at approximately $99,663, or approximately $100,000. Although there is no indication in the trial court’s judgment on remand that it specifically multiplied the wife’s average yearly income by 1.64 to determine the value of the wife’s interest in TEC, it is clear from the judgment that the trial court used the wife’s average yearly income to project the future value of the wife’s interest in TEC. Considering the evidence indicating that the husband, as the consultant, was the only party to actually bring in income and that TEC had outstanding tax liabilities totaling approximately $65,000, but also considering the evidence indicating that TEC was thriving *872 at the time of trial and that TEC was on track to have its best year ever, we find no error in the trial court’s determination that the wife’s interest in TEC equaled $100,000.[3] According to the judgment entered on remand, it appears that the trial court also awarded the wife 51% of the value of the three vehicles owned by TEC, or $22,440 ($44,000 X .51 = $22,440). The sum of $100,000 and $22,440 equals $122,440, i.e., the amount awarded to the wife as the value of her interest in TEC. Accordingly, we reject the husband’s argument that the trial court’s determination of the value of the wife’s interest in TEC was unsupported by the evidence.
We also reject the husband’s argument that the trial court erred by relying on the wife’s historical income to determine the value of the wife’s interest in TEC. In support of his argument, the husband quotes from this court’s opinion in Shewbart I, supra, where we quoted from an article from the Massachusetts Bar Association that stated: 19 So.3d at 282 n. 6 (quoting Robert J. Rivers, Jr., “The ‘Double-Dipping’ Concept in Business Valuation For Divorce Purposes,” Massachusetts Bar Association (2006)).
“ ‘It is basic valuation theory that the value of a business is equal to the present worth of the future benefits of ownership....
“ ‘This fundamental theory of business valuation is sometimes misinterpreted by courts due to the misconception that business valuation is based upon an averaging of past income, rather than a projection as to what the future income will be based upon a review of the historical earnings of the company.... [T]he role of past earnings is simply to provide an indication as to projected future earnings ....’”
We cannot conclude that the trial court’s consideration of the wife’s historical earnings from TEC was used by the trial court for any purpose other than to provide an indication as to the wife’s projected future earnings. We note that the trial court did not value the wife’s interest in TEC based solely on the average of the wife’s past income; instead, the record indicates that the trial court used the wife’s average income to project the worth of the future benefits of ownership.
The husband also contends that the trial court’s valuation does not take into account evidence indicating that he had lost one of his biggest clients in 2007. The husband testified that one of his biggest clients reorganized in 2007 and that there was a period of two or three months in 2007 that he did not do any work for them. However, those facts were accounted for in the trial court’s calculations because the evidence the trial court used to calculate the wife’s average income from TEC reflected that the income distributions paid to the wife in 2007 and the wages earned by the wife in 2007 were low compared to some earlier years. Accordingly, the loss of business in 2007 lowered the wife’s average earnings, which the trial court used to determine the projected future earnings of TEC.
After a review of the record and consideration of the arguments presented by the husband on appeal, we cannot conclude that the trial court committed reversible *873 error by valuing the wife’s interest in TEC at $122,440. Although we recognize that the wife’s motions to appoint a special master were denied, nothing in the record indicates that either party attempted to tender an expert at trial to offer an opinion as to the value of TEC.[4] Therefore, the parties left to the trial court the extremely difficult task of valuing a privately held service-based corporation without the assistance of expert testimony. This court does not expect the trial-court judges in this state to be experts in making valuations of such business organizations; in this case, even the accountant for TEC unequivocally stated that she was not qualified to make a valuation of TEC. Based on the evidence presented by the parties, we cannot conclude that the trial court’s determination of the value of the wife’s interest in TEC was so unsupported by the evidence as to be plainly or palpably wrong. See Blasdel II, 65 So.3d at 431 (quoting Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007)). Accordingly, we affirm the trial court’s judgment.
APPLICATION FOR REHEARING OVERRULED; OPINION OF JUNE 15, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Although the divorce judgment appealed in Blasdel II was entered in case no. DR-07-414.00, the judgment entered by the trial court after remand from Blasdel II was entered in case no. DR-07-414.01.

. We note, as we did in Blasdel II, that this court has subsequently decided that, "in the context of valuing a divorcing spouse’s interest in a closely held business organization, a trial court should not apply a minority or marketability discount to the fair value of the business organization.” 65 So.3d at 432 n. 3. (citing Grelier v. Grelier, 44 So.3d 1092 (Ala.Civ.App.2009)).

. We make this determination based on the evidence actually presented to the trial court. We find it notable that the husband did not argue to the trial court that a valuation method set forth in Shewbart I and Birmingham News, supra, should have been utilized until after the trial court had entered a judgment on remand, long after the conclusion of the ore tenus hearing.

. The record indicates that the wife requested the appointment of a special master before trial in the divorce action and, as noted supra, that she requested appointment of a special master after the trial court issued its judgment on remand.